BURDICK *v.* HARBOR SPRINGS LUMBER CO.

1. RES ADJUDICATA—INJUNCTION—EQUITY — DECREE — MOTION TO DISSOLVE.

The opinion and finding of the court in the preliminary holding (*Harbor Springs Lumber Co.* v. *Emmet Circuit Judge*, 160 Mich. 497 [125 N. W. 390]), on mandamus to dissolve an injunction heretofore granted in this cause, is conclusive of the question which was presented and determined as to the propriety of the equitable remedy and jurisdiction to enjoin an alleged trespass.

2. EQUITY—ADEQUACY OF REMEDY AT LAW.

As against the objection that complainant has an adequate remedy at law, equity has jurisdiction to enjoin the unlawful use of complainants' land as a right of way, under invalid proceedings to open the way by the township board in pursuance of Act No. 283, Pub. Acts 1909.

3. CONSTITUTIONAL LAW—HIGHWAYS AND STREETS—EASEMENTS— PRIVATE WAY.

A private way to timber land over adjoining property must be opened in the manner prescribed by section 3, art. 13, Const. of 1909, requiring a jury of six freeholders or three commissioners to determine the necessity and damages therefor.

4. SAME—STATUTES.

Sections 7, 8, 9 and 10 of Act No. 283, Pub. Acts 1909, providing for the laying out of private ways to timber land over adjoining premises are invalid under the requirements of the Constitution.

5. WORDS AND PHRASES—HIGHWAYS—PRIVATE WAY—EASEMENTS AND SERVITUDES.

The term "private highway" as employed in said act, means a private road, not a public thoroughfare.

Appeal from Emmet; Shepherd, J. Submitted November 14, 1911. (Docket No. 96.) Decided December 20, 1911.

Bill by Myron Burdick and Rickey Burdick, his wife, against the Harbor Springs Lumber Company to enjoin

a trespass. From a decree for complainants, defendant appeals. Affirmed.

*Pailthorp & Hackney,* for complainants.

*Halstead & Halstead* and *A. L. Deuel,* for defendant.

STEERE, J. Defendant appealed from a final decree, making permanent a temporary injunction previously granted, restraining it from tearing down and destroying complainants' fences and entering upon their land. This the defendant was doing while opening and using an alleged private highway, claimed to have been secured under sections 8, 9, and 10 of chapter 9, Act No. 283, Pub. Acts 1909.

Defendant is a private corporation engaged in logging and the manufacture and sale of lumber and kindred products, having its office and principal place of business in the village of Harbor Springs, Little Traverse township, Emmet county.

Complainants are husband and wife, owning jointly the land in question, which is a farm of 80 acres, described as W. ½ of the S. W. ¼, section 36, town 36 north, of range 6 west, in West Traverse township, Emmet county. It is fenced and mostly cleared, having upon it the usual farm buildings and appurtenances. Complainants reside upon this land, being engaged in farming and running a dairy. Public highways, opened and traveled by the public, bound this land on all four sides.

Defendant had filed a petition for laying out a temporary highway across said land, directed to the commissioner of highways of the township of West Traverse. It was not signed by a resident of said township. The commissioner of highways certified the petition to the township board, and a determination that a temporary highway was "necessary for the purpose of removing the timber from the land described in said application" was thereafter signed by said commissioner and three members of

the township board. The return of said commissioner to the determination certifies that he signed the same under a misapprehension. After a preliminary injunction was granted herein, application was made to this court for a writ of mandamus to compel the circuit judge to vacate an order denying a motion to dissolve said injunction. This was denied.

It is the claim of complainants that the act under which defendant endeavored to secure the private highway is unconstitutional, and that, in any event, the proceedings taken under it are irregular and void.

Defendant contends that the law is constitutional, and the proceedings are regular; that, these two questions being the only important ones involved in the case, a review should be had on the law side of the court upon certiorari; that the chancery court has no jurisdiction, and complainants have sought the wrong remedy.

The three questions presented and argued in this case are: The remedy; the constitutionality of that portion of the act under which proceedings were taken to open the highway; and the regularity of those proceedings.

It is claimed on the part of complainants that the first question is foreclosed by the preliminary opinion in this case (*Harbor Springs Lumber Co.* v. *Emmet Circuit Judge,* 160 Mich. 497 [125 N. W. 390]), wherein it is said:

"The case stated by the bill of complaint is one properly brought upon the chancery side of the court."

On the part of defendant it is urged that the propriety of the remedy was not raised in that proceeding; that the quotation relied on by complainants was not essential to a disposition of the case, consequently was pure dictum.

An examination of the printed record and briefs in that case discloses that the petitioner (defendant here) stated in its petition 17 reasons for the dissolution of the temporary injunction, which had been urged in its motion before the trial judge, whose refusal to dissolve said injunc-

tion was the grievance sought to be relieved by mandamus. Among these reasons are the following:

"(*a*) There is no equity on the face of the bill.

"(*c*) The complainants have an adequate remedy at law.

"(*d*) The complainants have mistaken their remedy."

These reasons were not overlooked in the briefs of counsel. The question of jurisdiction appears to have been plainly presented to the court as a vital issue and squarely passed upon. The court there quotes the averments of complainant's bill, which is the one before us now, and says:

"This contention that all questions involved are legal ones is true only in the event that this court should find the law of the case to be as relator claims it to be. In the event that it should find the case is as claimed by complainants in the chancery case, there is the question of damages to be determined. The court below has not passed upon that question, and this court is not in possession of any facts upon which it could intelligently reach a conclusion upon that phase of the case.

"The case stated by the bill of complaint is one properly brought upon the chancery side of the court."

The trial court has since passed upon the question of damages, and defendant's counsel state in their brief:

"If complainants are entitled to recover damages at all, we make no complaint as to the amount awarded by the circuit judge."

Counsel have furnished us with able and interesting briefs on the question of jurisdiction. It is plainly pointed out by abundant authority that injunction will not lie where there is an adequate remedy at law; that certiorari is a proper and favorite remedy to review proceedings of commissioners in laying out and opening highways, drains, etc.; that such remedy is usually adequate, and when so is the only proper remedy. It is well settled that in those cases where the law affords a plain and adequate remedy for persons aggrieved by the action of commis-

sioners in the opening of highways relief will not be given by injunction; but it is also well settled that—

"When defendants, the road commissioners of a town, acting as public officers under an unfounded claim of authority, are endeavoring to appropriate complainants' land to the use of the public for a highway, they may be enjoined from entering upon the land and from removing trees, buildings, and fences therefrom. And in such case, the court, having properly acquired jurisdiction for the purposes of the injunction, may, in order to prevent a multiplicity of suits and to do complete justice between the parties, under the prayer for general relief, award damages for the injuries already committed. * * * So, where an award of a board of highway commissioners in laying out a highway is void for want of jurisdiction, because of a failure to give the notice required by law, the giving of such notice being treated as a jurisdictional matter, the court of equity may enjoin further proceedings for the opening of the highway." 1 High on Injunctions, § 592.

This court held that the facts stated in complainant's bill bring the case within the latter class, and the matter is *res adjudicata.*

Of the several irregularities which it is claimed invalidate the proceedings taken by defendant to open the private highway, the question of residence seems most worthy of consideration. The act provides that application may be made by a "resident" owner. In most statutes where the matter of residence is deemed important, we find it limited by express language, or conclusive context, to the State, county, township, or other more restricted district. No such express language is found in this act; nor is it fairly inferable from the context. The act states that the owner may apply to the commissioner of highways, not in the township in which the applicant resides, nor of which he is an inhabitant, but of "the proper township." The word "resident" is of doubtful import when used with no localization. When so used to modify pre-existing laws, we think it should be construed as intending the least, rather than the greatest, possible

change, and when no particular locality is designated it means a resident of the State; the restriction as to residence being limited to the jurisdiction of the sovereign, which in this instance is the State.

We next consider complainants' claim that the portion of chapter 9 of Act No. 283 [Pub. Acts 1909], which relates to temporary highways, and under which defendant seeks to justify, is unconstitutional and void. Said act is entitled—

"An act to revise, consolidate and add to the laws relating to the establishment, opening, improvement, maintenance and use of the public highways and private roads, the condemnation of property and gravel therefor," etc.

Chapter 9 of said act is entitled "Opening of private roads and temporary highways." Sections 1 to 6 of said chapter authorize opening private roads, and prescribe the method in harmony with section 3, art. 13, of the Constitution (1909). Sections 7 to 10, inclusive, of said chapter, being those under consideration, authorize the opening of temporary highways to allow resident owners of timber lands to remove the timber therefrom. It is the contention that the phraseology of these sections limits and restricts such ways to the character of private roads, and the manner prescribed for their opening is in violation of the requirements of section 3, art. 13, of the Constitution. The test of constitutionality is whether the language used in the statute makes the so-called temporary highway a private road, or a highway open to public use. If it is a private road or way, the method of opening it violates the Constitution.

Section 7 of said chapter provides:

" Whenever any resident owner of any timbered land not less than forty acres, shall wish to have a temporary highway laid out, he may, in writing, make application to the commissioner of highways of the proper township for that purpose, who shall proceed to lay out such temporary highway, in all respects as provided by law in relation to laying out public highways, except as hereinafter provided."

Section 8 is in part as follows:

" When any such application shall be made the commissioner of highways of the township in which such road is to be located shall immediately certify the same to the township board of said township,  *  *  *  and if the said highway commissioner and the township board shall determine that said highway is necessary for the purpose of removing the timber from such lands they shall certify the same," etc.

Section 9, after describing the details of laying out such way, and imposing certain restrictions as to the route, says:

" Such temporary highways shall be *private* highways and all the expenses of their laying out  *  *  *  shall be paid to the commissioner by the persons applying for the same, and upon such payment they may enter upon, open and work such highways at their own and sole expense," etc.

The word "road" has a varied meaning; it signifies a way of travel, and may mean a private way or a public thoroughfare. As a rule, its meaning is to be ascertained from the context, both in common usage and in statutes and decisions. It is now most commonly used as denoting a way for public travel in the country, as distinguished from the streets in a village or city. A highway is a way or thoroughfare open to all, a way over which the public at large have a right of passage; the name being derived from *alta via*, or king's highway, meaning a thoroughfare opened and maintained by the highest authority common to all, for the free use of the sovereign and all his subjects.

" The term 'highway' is the generic name for all kinds of public ways, including county and township roads, streets and alleys, turnpikes and plank roads, railroads and tramways, bridges and ferries, canals and navigable rivers. In short, every public thoroughfare is a highway." Elliott on Roads and Streets, § 1.

While it is common to call a thoroughfare open to the public a public highway, the adjective adds nothing and

is mere tautology; the unqualified and unrestricted use of the word "highway" in the sections referred to could be construed as an intent on the part of the legislature that the way primarily opened for the use of the owner of timbered lands should also be free to the public.

The public is nowhere mentioned in these sections, and the only possible suggestion that the public is authorized to use the way to be opened, or to have any rights whatever in it, is contained in the use of the word "highway." The manifest object of the sections we are.considering is to provide a way by which the owner of timbered lands may conveniently and economically remove the timber therefrom. His necessities only are required to be considered by the authorities in passing on the application. The object is purely private, and there is nothing in the act to indicate that the public is interested. Assuming that these proceedings may be justified and vested with constitutionality by the legislature declaring such temporary way thus opened shall be free to all and a public highway, can such construction be put upon the language used in this act? The legislature expressly declares in section 9 that "such temporary highways shall be *private* highways." Counsel for defendant contend that the name given the way does not necessarily determine its character, especially when the term is self-contradictory, and that the word "private" should not be permitted to emasculate the word "highway," unless the purpose of the statute or other independent language unavoidably demands it. It is true that the term "private highway" embodies a contradiction which destroys the original significance of the noun, if the adjective is recognized. We would not be justified in holding that the legislature used this expression carelessly or unintentionally; it is peculiar and striking, and of that contradictory class of expressions, containing a negative and affirmative, which are not usually overlooked. The general interpretation of such expressions, and manner in which they are usually understood, is that, where a compound word is qualified

by an adjective negativing the significance of the prefix of such word, the independent adjective prevails over the prefix. A private highway is private, just as a tame wildcat is tame, or a white blackbird is white. The inference from the use of the word "highway" is further negatived by the provision of section 9, declaring, not only that it shall be private, but that upon payment of all costs and damages the petitioners may enter upon and open and work such highways at their own and sole expense, naming them as a class, to the inferred exclusion of all others.

The object of the law being primarily to open a way of convenience for a private individual to get out his timber, and the only word used in the act from which a public right can be inferred being negatived, we can only construe this act as providing for the opening of a private way or road by methods which are in violation of section 3, art. 13, of the Constitution. It is a well settled rule of construction that the courts should not undertake to make the legislature say what it has not said. By the same token, they should not undertake to make the legislature say the converse of what it has said. The legislature in this case has clearly said that this way should be private. It is also a rule of construction, recognized by eminent authority, that the courts should not allow themselves to resort to freedom of interpretation or forced construction in order to save a law which is ambiguous or defective, where it can easily be remodeled by legislation; and in that connection we might note in passing that sections 7 and 8 of said chapter have already been amended. Act No. 153, Pub. Acts 1911. We are constrained to hold unconstitutional the provisions of the statute under which defendants seek to justify.

The decree is affirmed, with costs.

OSTRANDER, C. J., and MCALVAY, BLAIR, and STONE, JJ., concurred.