GROVES *v.* BOWMAN.

1. EQUITY—INJUNCTION—HIGHWAYS AND STREETS—MISTAKE—APPEAL—ADEQUATE REMEDY AT LAW.

Equity has jurisdiction to restrain defendant highway commissioner from threatened trespass and injury to plaintiff's freehold and to compensate him for damages already sustained, where defendant was attempting to locate, by mistake, a highway elsewhere than upon the true quarter line; and plaintiff's remedy was not by appeal under section 4294, 1 Comp. Laws 1915, since he was not opposing the opening of the highway as petitioned for, nor attacking the statutory proceedings determining it a public necessity.

2. BOUNDARIES—LOCATION OF QUARTER POST—EVIDENCE—SECONDARY EVIDENCE.

Although the recognized method of relocating a lost quarter post is to divide the section line equally, measured from corner to corner, such evidence is secondary in its nature and must yield to satisfactory, direct proof of the true location of the original corner.

3. SAME—EVIDENCE—SUFFICIENCY.

Testimony by plaintiff and his witnesses that they had seen the original quarter post, positively locating it, *held*, sufficient to sustain a decree in his favor as to its true location.

Appeal from Bay; Collins, J. Submitted October 24, 1917. (Docket No. 51.) Decided March 28, 1918.

Bill by George Groves against William Bowman, highway commissioner of Gibson township, to restrain the laying out of a highway on plaintiff's land. From a decree for plaintiff, defendant appeals. Affirmed.

*Kinnane & Black*, for plaintiff.

*C. W. Hitchcock*, for defendant.

STEERE, J. Defendant Bowman, highway commissioner of Gibson township, in Bay county, moved by a petition of certain qualified freeholders, took steps in May, 1914, to open a new highway one-half mile in length between the southeast and southwest quarters of section 5 of said township as a continuation of an established road extending north from the village of Bentley along the north and south quarter-line of section 8 to its north line, which is also the south line of section 5. So extended, the road running north from Bentley would connect with an east and west highway on the quarter line through the middle of section 5.

The necessary right of way required a two-rod strip of land from the east side of the east half of the southwest quarter of section 5, owned by Walter D. Wilcox and William J. Banks, and two rods from the west side of the west half of the southeast quarter, owned by plaintiff, George Groves. Wilcox and Banks granted the strip on their side of the quarter line to the township without further compensation than the benefits they would receive from opening the proposed highway, and plaintiff Groves the two rods on his side by the following written agreement:

"For and in consideration of the sum of seventy-five and *no dollars,* to me in hand paid by W. M. Bowman, commissioner of highways of the township of Gibson,

county of Bay, State of Michigan, do hereby convey and release to the township of Gibson aforesaid, all my right, title and interest in and to so much of the lands now owned by me as shall be necessary to lay out, open and construct a public highway along or across the following described premises, to-wit:

"West ½ of S. E. ¼ Sec. 5. Said public highway to be laid out, opened, and constructed along or across said premises along the following route, to-wit: Commencing at government quarter post and running north through south ½ of section (5) five in parallel line with road running north through section 8 on quarter line, a strip of ground (2) rods wide and ½ mile long.

"This conveyance is based upon the above described line of route, and shall be deemed to include the extreme width of said highway as shown in the survey thereof, to which survey reference is hereby made for a more particular measurement, and includes all claims for damages in any way arising from the laying out, opening, or constructing of said highway along or across said premises.

"Witness my hand and seal this 17th day of October, A. D. 1914.

"GEORGE GROVES.    (L. S.)"

This instrument was executed to supply the defects of a release given the preceding May and was in proper form for recording. It was placed on record in the office of the register of deeds of Bay county, on November 4, 1914.

While the preliminary statutory steps were being taken to lay out this highway, plaintiff did not oppose the project, and harmony prevailed until defendant had the line surveyed in November, after the release of right of way had been given. This survey located the commencing point or quarter post in the south line of section 5 about 95 feet east of the center line of the north end of the Bentley road which plaintiff claimed terminated at the quarter post. From there a post and wire fence extended north, which he claimed was on

the quarter line in section 5, marking his western boundary, up to which he had occupied, used and asserted ownership of the inclosed land for many years, clearing all but a grove which he preserved for shade and ornament.

In December, 1914, defendant served notice upon plaintiff to remove his fence, and, following a disagreement as to the true line, plaintiff served notice upon defendant forbidding him from entering upon his inclosure for the purpose of cutting out or opening a road on the line as proposed. Not long thereafter defendant went with a crew of employees and started construction of the road along the line he had determined upon, entered upon plaintiff's land, removed some of the fence and cut down a quantity of trees in the grove through which the full four rods right of way as projected ran, against the protest of plaintiff, who thereupon filed this bill of complaint to restrain further threatened trespass and injury to his freehold, and incidentally for damages already sustained. A temporary injunction was granted, defendant filed an answer, setting up also affirmative matter as by cross-bill to which plaintiff made answer. The suit was thereafter heard upon pleadings and proofs taken in open court, resulting in a decree sustaining plaintiff's contentions and granting the relief asked.

Early in the hearing it was indicated there had been friction over this line between interested parties some years before and plaintiff's counsel advanced the theory that the effort to open this new road on the line proposed was an attempt to use the township authorities "to settle a disputed line between neighbors," which was disavowed by defendant's counsel and the court intimated that in order to fairly settle the whole matter once for all the owners on the west of this quarter line and proposed road, who were necessarily interested, should in some way be brought in and made

parties to the litigation. After the noon recess defendant's counsel announced that, in view of the court's suggestion, he was authorized by Banks and Wilcox, the owners on the west, who were present in court, to state that they were willing to be bound by any decree the court might render in establishing the line of the proposed highway, and for that purpose, or in that sense, they could be made parties, which both of them, who were witnesses in the case, ratified in open court.

The question of equity jurisdiction is raised by defendant, and it is urged that plaintiff has mistaken his forum, because he had an adequate remedy at law through appeal under the provisions of Act No. 283, Pub. Acts 1909, and amendments thereof (1 Comp. Laws 1915, § 4287 *et seq.*), pursuant to which the proceedings were taken to lay out and open the proposed highway. The infirmity in such contention is that plaintiff is not opposing the opening of the highway as petitioned for, nor attacking the statutory proceedings determining it a public necessity, nor raising any question as to award of damages for right of way, which he released by an amicable agreement before the survey of which he complains was made. His claimed grievance is that, whether by mistake or otherwise, the commissioner incorrectly located and proceeded to open the highway elsewhere than along the quarter line and outside of the right of way released, entirely upon plaintiff's land, to accomplish which he invaded plaintiff's premises, damaged his freehold and was endeavoring to appropriate certain of his land for use as a public highway under an unfounded claim of legal right at the time this bill was filed and relief asked. It is said in *Harbor Springs Lumber Co.* v. *Emmet Circuit Judge,* 160 Mich. 497:

"A bill in chancery that avers a trespass on complainant's land, the tearing down of his fences and damage to crops, the threatened continuation of the

same, and that prays for an injunction to restrain the wrong, states a proper case for equity jurisdiction."

*Vide*, also, *Burdick* v. *Lumber Co.*, 167 Mich. 673, and *Loud* v. *Deacon*, 189 Mich. 177.

In the latter case this court sustained the decision of the trial court, holding, in substance, that where the highway commissioner had located, by mistake, a ' highway elsewhere than upon the true quarter line as contemplated and described in the petition therefor, complainants were entitled to enjoin laying out the highway so mistakenly located over their lands, there being no adequate remedy at law.

The controlling and triable issue in this case was .clearly one of fact as to the true location of the south quarter post marking the south end of the north and south quarter line of section 5, according to the government survey. Plaintiff made distinct provision in the release he gave that the proposed highway should commence at the "government quarter post," which necessarily meant in the south line of section 5, as no other quarter post was in the vicinity of his land, and should run "north through south half of section five (5) in parallel line with the road running north through section 8 on quarter line," lamely indicating the intent or understanding on his part that the new road would be a direct continuation north of the Bentley road, assumed to terminate at the quarter post. While the petition therefor does not appear in the record, he alleges in his bill of complaint, and it appears to be undisputed, that the statutory proceedings described and were taken to lay out and open the proposed highway "along the north and south quarter line of said section five." Read in connection with the allegations in his bill, plaintiff's release, which takes the government quarter post as the place of beginning, is to be construed as covering a strip of land two rods wide on the east side of the south half of said quar-

ter line, wherever that began and ran. The true quarter lines through a section, which were not run in the government survey, are straight lines between opposite government quarter posts marked and set in running the section lines. The location of the quarter post in the north line of section 5 is not in dispute.

The quarter post set in the government survey and the marked witness trees indicating its exact locality had disappeared years before this new highway was projected as the result of clearing the land in that locality and the opening of a highway along the east and west section line between sections 8 and 5. Its location as set and marked by the government surveyors was put in issue by the conflicting testimony of witnesses, consisting chiefly of an array of old inhabitants and land surveyors, called by the respective sides. None of the surveyors on either side had personal knowledge or could find any evidence of the original quarter post. Although disagreeing in certain particulars as to their conclusions and measurements, it was conceded that by the recognized method of relocating a lost or obscured quarter post (which was to divide the section line equally, measured from corner to corner), such relocation would approximate the locality claimed by defendant. That such evidence is secondary in its nature and must yield to satisfactory, direct proof of the true location of the original section and quarter section corners as established and marked by the government surveyors, even though less accurate, is too well settled to call for any extended citation of authority. The subject is reviewed at length and the question determined for this State in the early case of *Britton* v. *Ferry*, 14 Mich. 53.

Plaintiff was among the pioneers in the early development of that locality, and had lived in Gibson township 34 years. He testified that he had owned the land in question about 24 years and early saw the

original quarter post at its southwest corner when its locality was yet undisturbed and the marked witness trees standing, which he described; that he was there when a surveyor named Pierce surveyed the line over 20 years before and replaced the original stake, and he first built a pole and log fence along his west line beginning at that quarter post, after which a fence was maintained on that line, where his west boundary post and wire fence stands.

After the timber had been cut out and a highway had been improved along the line between sections 5 and 8 a question arose as to the exact locality of this quarter post. In 1895 a surveyor named Kelly was doing some work in that locality and in running this line he was unable to find this quarter post or any witness trees marking its location, and he relocated it by setting a stake half way between the two corners. Some 12 years before this case was heard, in 1915, a controversy arose between plaintiff and Wilcox over the location of the fence between them, and the latter had a survey made by Kelly who divided the section line as before, locating the quarter post about 96 feet east of where Groves claimed it was. Trouble between Wilcox and plaintiff over their fence line became acute for a time, resulting in certain legal entanglements, which later abated in connection with proceedings in which fence-viewers directed where and what portion of the fence each should build, and a new post and wire fence was built along the line of the old fence leaving their boundaries as before.

While upon the issue of true location the testimony of witnesses for the respective parties is in distinct variance as to their conclusions and observations in many particulars, that of defendant's witnesses is directed to relocating a quarter post which they did not find and never saw, while most of plaintiff's witnesses testify positively to having seen it and the exact lo-

cation where they found it at a time when natural conditions were undisturbed and both the stake and its witness trees were yet there. Aside from plaintiff, five of these witnesses who were pioneers in that locality testified to having helped or seen the surveyor Pierce run the line on which it was located 23 years before the time of the hearing; at which time the original quarter stake and its witness trees were found and seen by them. They describe the witness trees and the old surveyor's marks upon them, the nature and location of the stake and attending circumstances in detail; they claimed continued familiarity with the spot, testifying that plaintiff's west line fence started from it and the Bentley road terminated at it. Without reviewing further the extended testimony upon that issue, we deem it sufficient to state that the record abundantly supports the conclusions reached by the learned circuit judge who heard the case and saw the witnesses as they testified.

The award of damages for injury to the freehold is conservatively within the proofs, and we find no occasion to disturb the decree, which is hereby affirmed, with costs to plaintiff.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.