NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0542n.06

No. 19-2244

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BRANDON LACHARLES-MARQUIS-EDWA KELLY, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**FILED**
Sep 21, 2020
DEBORAH S. HUNT, Clerk

BEFORE:     DAUGHTREY, DONALD, and READLER, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Officer Quinn D'Ascenzo of the Kentwood (Michigan) Police Department initiated a traffic stop of defendant Brandon Kelly after determining that Kelly was driving an uninsured vehicle.  When Kelly was unable to produce a valid driver's license, D'Ascenzo placed him under arrest and began the process of impounding the car Kelly had been driving.  Another officer who came to assist D'Ascenzo inventoried the contents of the vehicle and found a loaded firearm hidden underneath the front seat. Kelly admitted his ownership of the weapon, leading to his conditional guilty plea to a charge of being a felon in possession of a firearm.  Kelly now contends that the inventory search of the car violated his rights under the Fourth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment.  We disagree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Shortly after 8:00 p.m. on January 22, 2019, police officer Quinn D'Ascenzo stopped behind a vehicle at a traffic light in Kentwood, Michigan. As he did on a regular basis, while waiting for the light to turn green, D'Ascenzo ran the license plate number of the car in front of his cruiser. Learning "that the vehicle didn't have a record of insurance"—a violation of a city ordinance and of a state statute—D'Ascenzo activated his overhead lights and followed the vehicle until it pulled next to a gas pump in a nearby, "fairly busy" gas station. According to D'Ascenzo, by doing so, the vehicle not only prevented any other car from accessing that particular gas pump, but also prevented other vehicles from "driv[ing] through that specific gas lane."

D'Ascenzo informed the driver of the uninsured car, defendant Brandon Kelly, of the reason for the traffic stop and asked to see Kelly's driver's license. When Kelly responded that he did not possess a valid license, D'Ascenzo placed Kelly under arrest, handcuffed him, and placed him in the back of the police cruiser. When a second Kentwood police officer, Jared Hundey, arrived on the scene to assist D'Ascenzo, the officers began the process of impounding the vehicle Kelly had been driving because the uninsured vehicle could not have been driven back onto the city streets legally and because the vehicle was "hampering the use of private property."

Pursuant to the Kentwood Police Department impound policy, a vehicle "may be immediately impounded" if it "is hampering the use of private property by the owner or person in charge of that property or is parked in a manner which impedes the movement of another vehicle." Prior to releasing the impounded vehicle to a tow truck driver for transport, however, an officer must conduct an inventory of the vehicle "to provide for the safekeeping of the vehicle and its contents." Consequently, Hundey conducted a search of the interior of the vehicle and recovered

from under the front seat "a small black revolver . . . loaded with five rounds of 38 Special" ammunition, a weapon that Kelly later admitted was his.

While Kelly was detained in the backseat of D'Ascenzo's cruiser, but before the inventory of the car's contents had begun, the defendant received a call on his cell phone from the woman who owned the vehicle Kelly had been driving. Recognizing the name that appeared on the phone's caller-ID function as that of the woman to whom the car was registered, D'Ascenzo answered the phone for Kelly and explained that the woman's vehicle was being impounded. Despite the fact that the woman expressed her desire that the car not be impounded and that she was on her way to the gas station, D'Ascenzo continued with the impound process because, according to the officer, "it is very common for us to receive an estimated time from an owner or other licensed driver and that the actual time of response is much, much longer."

When the owner of the uninsured vehicle arrived at the gas station, she admitted to D'Ascenzo that her automobile insurance had lapsed and that the car presently was uninsured. She did request, however, that the officers retrieve books and a binder that she had left in the car and that she needed for a class the following day. With no reason to withhold those personal items, Hundey returned them to the woman before arranging for the transport of the car to an impound lot.

A federal grand jury later indicted Kelly for being a felon in possession of a firearm, leading the defendant to file a motion to suppress the revolver found in the car and his statement admitting his ownership of the firearm. In that motion, he asserted that the Kentwood police officers failed to follow departmental procedures when deciding to impound the car because the officers "did not first explore whether the vehicle could be released [to a licensed driver] or left parked [at the gas station]."

The district court conducted a suppression hearing but ultimately denied Kelly's motion. In doing so, the district court concluded:

> So my overall review of the facts and the evidence here suggests that the officers did follow the impoundment and inventory procedures, they did invoke the proper basis for it, had a proper basis for it, and then continued it to conclusion as required, and in the course of it found a firearm, even though they weren't looking for it.

In light of that ruling, Kelly entered into a plea agreement with the government whereby he agreed to plead guilty to the sole count in the indictment but reserved the right to appeal the denial of his suppression motion. The district court accepted the guilty plea and sentenced Kelly to 60 months in prison, three years of supervised release, a $100 special assessment, and a fine of $1,000.

## DISCUSSION

In accordance with the right reserved in his plea agreement, Kelly now challenges the propriety of the district court's ruling on his motion to suppress. He asserts that the rights accorded him by the Fourth Amendment to the United States Constitution were violated by the failure of the Kentwood police officers to follow the city's impoundment and inventory guidelines.

The Fourth Amendment, one of the amendments to the Constitution that was envisioned as a bulwark against the unrestrained police power of the government, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

Almost half a century ago, however, the United States Supreme Court stated clearly that a police inventory of the contents of an automobile prior to a lawful impoundment of that conveyance did not contravene Fourth Amendment protections, even in the absence of a search warrant. *South Dakota v. Opperman*, 428 U.S. 364, 375-76 (1976).

The Court noted that procedures associated with securing and inventorying the contents of impounded automobiles were "developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *Id.* at 369 (citations omitted). Thus, "[t]he policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (citing *Opperman*, 428 U.S. at 370 n.5). Even so, however, a police officer's discretion in conducting an inventory of a vehicle must be "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 375. The inventory "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). Assuming that such safeguards are followed, "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Bertine*, 479 U.S. at 374.

As he did in the district court, Kelly now maintains on appeal that the impoundment of the vehicle he was driving did not comport with the written impound policy of the Kentwood Police Department. Kelly thus insists that "the inventory search conducted in preparation for the impoundment of the vehicle was also in violation of the Fourth Amendment. Any statements by Kelly or seizure of items from Kelly's vehicle are also barred from evidence in this case as the result of the initial tainted impoundment." Appellant's Br. at 20.

As we stated previously, however, the relevant Kentwood Police Department policy specifically allows for immediate impoundment of vehicles "from public property or any other place open to travel by the public" for various reasons, including "[i]f the vehicle is hampering the

use of private property by the owner or person in charge of that property or is parked in a manner which impedes the movement of another vehicle." *See* Kentwood Police Department Impound Policy § 3.3(10). Nevertheless, Kelly insists that the departmental policy also contains an expressed exception to the allowance of immediate impoundment "when the vehicle can be reasonably released to another licensed driver with the permission of the arrested driver; or, the vehicle can be legally parked at the scene at the request of the arrested driver." *Id.* at § 3.3(4).

Relying upon those exceptions, Kelly submits that the vehicle he was driving on January 22, 2019, could have been released to the woman who owned the vehicle once she arrived at the scene of the arrest. Additionally, he claims that the car, instead of being impounded, could have been parked in a designated space at the gas station away from the gas pumps. For multiple reasons, however, we find that Kelly's suggested alternatives to impoundment are not applicable in this situation.

First, the § 3.3(4) exceptions to the Kentwood policy upon which Kelly relies concern vehicles that "would thereby be left unattended *on the street*." (Emphasis added.) In this case, Kelly stopped and parked the vehicle that he had been driving on *private property* where it could "impede[ ] the movement of another vehicle." *Id.* at 3.3(10). Even if § 3.3(4)'s exceptions are applicable in impound situations falling under § 3.3(10) of the policy, other considerations militate against the result Kelly now seeks.

Kelly argues that the police, rather than instituting impoundment procedures, could have released the vehicle to its titled owner who arrived at the scene of the arrest. However, this provision of § 3.3(4) of the department's impound policy upon which Kelly relies applies only if the vehicle "can be *reasonably* released to another licensed driver." (Emphasis added.) Although there is no dispute in this case that the true owner of the vehicle that Kelly was driving was a

"licensed driver," it also is undisputed that the vehicle could not be released "reasonably" to her to drive it from the gas station because she did not have valid insurance on her vehicle. Michigan Compiled Laws § 500.3102(2) makes it a misdemeanor to operate a motor vehicle "upon a public highway in this state, without having in full force and effect" automobile insurance.[1]  Thus, although the car's owner had a valid driver's license, she still could not drive her car legally on the streets of Kentwood.

Undeterred, Kelly continues to argue that the vehicle's owner could have had the car towed herself to her residence or could have parked the car in a designated parking spot at the gas station. Regardless of whether the law requires the police to terminate an impoundment process once a car's owner arrives on the scene, the record now before us is devoid of any evidence that the owner actually requested that she be allowed to have the car towed herself or to have the vehicle moved to another spot on the private property of the gas station owner. Kelly thus has failed to call into question the constitutionality of the actions of the Kentwood police.

## CONCLUSION

For the reasons discussed, we agree with the district court that the vehicle impoundment and inventory in this case was conducted pursuant to reasonable procedures promulgated in accordance with relevant Supreme Court precedent. We conclude that the district court properly denied Kelly's motion to suppress and thus AFFIRM the judgment of the district court.

---

[1] The term "highway" is given a broad definition under Michigan law. In fact, more than one hundred years ago, the Michigan Supreme Court recognized that the term is merely "the generic name for all kinds of public ways, including county and township roads, streets and alleys, turnpikes and plank roads, railroads and tramways, bridges and ferries, canals and navigable rivers. In short, every public thoroughfare is a highway." *Burdick v. Harbor Springs Lumber Co.*, 133 N.W. 822, 824 (Mich. 1911) (citation omitted).