## W. C. LONG v. THE CITY OF EMPORIA.

### No. 10387.

1. RIGHT OF WAY FOR SEWER—*resident on land for several years, a "known resident owner," within ¶ 837, Gen. Stat. 1889.* The term, "known resident owner," as used in paragraph 837 of the General Statutes of 1889 (Gen. Stat. 1897, ch. 37, §§ 153-4-5), relating to the condemnation of a right of way for a sewer, includes a resident on the land affected by the condemnation who has so resided for a number of years prior thereto. The fact of such residence will be presumed to be known to the city authorities seeking to make the condemnation, and notice of the proposed condemnation must be served on him by the marshal, or he will not be bound by the award of the appraisers.

2. ———— *where right to flow sewage through river not legally condemned, riparian proprietor may recover damages for pollution of water.* Condemnation of the right to flow sewage through a river must be made in the same manner as that of a right to lay pipes or make drains through the intermediate land lying between the city and the river; and a known resident owner of land bordering on a non-navigable river who has not been notified of the condemnation proceedings is not bound by the award of the appraisers, but may maintain an action for damages resulting to him from the pollution of the water caused by the sewage discharged into the river and carried on and along his land.

Error from Lyon District Court. W. A. Randolph, Judge. Opinion filed January 8, 1898. *Reversed.*

*Buck & Spencer* and *E. N. Evans*, for plaintiff in error.

*E. W. Cunningham*, for defendant in error.

ALLEN, J.  W. C. Long brought this suit against the City of Emporia, alleging in his petition that he was the owner of certain lands therein described, and bounded by the centre line of the Cottonwood River; that the defendant, a city of the second class, had constructed a sewer emptying into the river ninety rods above the west line of the plaintiff's land; that prior to the construction of the sewer the river afforded an abundant supply of pure running water for bathing, washing, and watering stock, and of clean and healthy ice; that by the construction of the sewer and the discharge thereof into the river the water had been rendered unfit for such uses and emitted unhealthy and noxious odors; that such injuries were permanent, and to the damage of the plaintiff twenty-two hundred dollars. The petition further alleged that the plaintiff was a resident owner in the actual possession of the land, and that the sewer was constructed without notice to him of any condemnation proceedings and without any condemnation of the land for such uses.

To this petition the defendant answered, *first*, with a general denial, and *second*, by setting up condemnation proceedings. The answer stated that ordinances for the construction of a system of sewerage were duly passed by the city council and approved by the mayor; that a resolution was duly passed appointing three disinterested resident tax payers of the city as appraisers to appraise the damage caused by laying off and constructing the sewer and connecting it with the Cottonwood river; that the appraisers were duly sworn, and, having given five days' notice in the official paper of the city of the time and place when and where they would convene to discharge their duties as such appraisers, and having posted a copy of such no-

tice, at the point where it was proposed to connect with the river, five days before such condemnation, proceeded to determine the damage which would result to all persons by laying such sewer and connecting the same with the river; that they duly reported their doings to the county clerk and filed a copy of their report with the county treasurer; that no appeal was ever taken from the appraisement, and that the sewer was afterwards constructed in accordance with the ordinances and condemnation thereunder. A copy of the report of the commissioners was attached to the answer, showing that they had proceeded to appraise the damages caused by laying off the right of way, and laying the sewer pipe and connecting the same with the river; that they went to, upon, and along the right of way, and along the Cottonwood River, and viewed and inspected the same; that they appraised the damages caused to each and every person by laying off the right of way and laying the sewer and connecting the same with the river, and allowed damages to persons therein named. But neither the plaintiff nor his land was named in the report, which contains this statement —

" No other person, through or along whose land the Cottonwood River runs, will be damaged by the laying off of said right of way, and by laying sewer pipes therein and connecting the same with the Cottonwood River."

The plaintiff demurred to the second defense on the general ground and this demurrer was overruled by the court. Error is assigned on this ruling.

We deem it necessary to consider only a single proposition discussed by counsel. Paragraph 837 of the General Statutes of 1889, (Gen. Stat. 1897, ch. 37, §§ 153–4–5,) regulates the manner of making condemnation for a right of way for the pipes and drains, and

connecting the same with a river, and contains this provision :

"The city marshal shall serve notice upon each known resident owner of land to be taken, and notice for five days prior to such condemnation shall be posted at the point where it is proposed to connect with such creek, ravine or river." § 154.

Notice of the condemnation was published in a newspaper, and posted at the mouth of the sewer in the manner required, but no notice was served on the plaintiff by the marshal. The plaintiff claims that this notice is jurisdictional, and that no valid condemnation could be made without it. In answer to this, it is said on behalf of the defendant, *first*, that it is not shown that the plaintiff was a known resident owner. The allegations of the petition are that he was and for more than five years had been in the actual possession, and the resident owner, of the land described in the petition. This seems to be a sufficient statement that he was a known resident owner. The term "resident owner" would seem to mean the owner residing on the land sought to be taken ; otherwise there is nothing to indicate what the word "resident" would signify. Where the owner resides on the land, we think it must be presumed that he is known, and that it is not for the city or the commissioners it appoints to make condemnation, to say that although he resided on the land they did not know it.

Assuming that Long was a known resident owner, counsel for the city contends, *second*, that he was not the owner of land taken, for the City did not enter on his land. No ditches were dug through it. No pipes were laid across it. He was a riparian proprietor, but the river flowed on after the construction of the sewer the same as before, and he was left with all his property intact. This argument has no tendency

1. Resident considered known resident owner.

to relieve the City.   If the condemnation proceedings are of any validity as against the plaintiff, it is because the City took through such proceedings a right to flow its sewage down the river over the plaintiff's land.   If the plaintiff's estate was not diminished by the condemnation proceedings and rendered servient to the rights of the City to discharge its sewage through the river, the City took nothing and the plaintiff lost nothing.   If this contention be sound there has been no condemnation, and the plaintiff is entitled to recover at least for damages sustained up to the time of the commencement of the suit.   The sound construction of the statute, however, would seem to be that the City may condemn, not merely a route necessary for connections with the river, but the right to discharge the sewage into the river.   The argument of counsel, that if the plaintiff may recover where his land has not been duly condemned, every riparian proprietor below him, even to the Gulf of Mexico, may also recover, is without force.   We have nothing to do with the practical question as to how far the stream may be contaminated by this sewer to such an extent as to warrant the recovery of damages.   The averments of the petition show that the water passing through the plaintiff's land was contaminated to such an extent as to render it unfit for use.   It does not admit of doubt that this was an injury to him and to his land.   For this injury he is entitled to recover, unless the City, through condemnation proceedings, has cut off his right to claim such damages.

It will not do to say that the proceeding to determine the rights of a riparian proprietor owning land adjoining a water course into which the sewage is emptied is essentially different in any

2. Riparian proprie-
tor may recover
damages, when.

particular from that provided for condemning the route along which pipes are to be laid.   In each case the city seeks to obtain a

right it does not possess without such proceedings. Wherever a valid condemnation is made and no appeal is taken, the right to maintain an action for damages is cut off. But to make the condemnation effectual every essential requirement of the statute must be complied with. One of these essentials is that notice shall be given to known resident owners of land 'affected. The plaintiff was a known resident owner and no notice was given to him. He is not bound by the award, and was under no obligation to appeal from it, for he was not a party to it.

The judgment is reversed, and the cause remanded with directions to sustain the demurrer.