J. H. CATRON ET AL., APPELLANTS, V. GEORGE A. DAILEY ET AL., APPELLEES.

FILED MAY 21, 1909.  No. 15,786.

1. Drainage Districts: ORGANIZATION. A majority in interest of the owners resident in this state of any contiguous body of swamp or overflowed lands in one or more counties in this state may sign articles of association for the formation of a drainage district under section 5561, Ann. St. 1907.

2. ———: ———: RESIDENT OWNERS. The words "resident owners," as used in said section, *held* to mean "owners resident in this state."

3. ———: ———. The district court may refuse to order the formation of such a district if none of the petitioners for the district reside within the county or counties in which the proposed district lies.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*F. L. Carrico* and *Hague & Anderbery,* for appellants.

*W. S. Morlan, contra.*

LETTON, J.

This is an appeal from an order of the district court for Harlan county denying the incorporation of a drainage district. J. H. Catron, E. K. Bradley, Bedie F. Bradley, his wife, and A. M. Munn filed their proposed articles of incorporation in the district court under the provisions of sections 5561-5597, Ann. St., 1907, praying for an order of incorporation. The petition set forth the limits of the proposed district, which included about 200 acres of land in Phelps county and about 520 acres in Harlan county, alleged it to be a contiguous body of wet, swamp, overflowed and submerged lands, and that the drainage thereof will be conducive of public health, convenience and welfare. It further states the names and residences of the owners of property within the district who refused to join in the organization. It is shown that those favorable to the organization own 480 acres and those opposed own 246 acres; that there are four persons, three of whom it is undisputed do not reside in Harlan or Phelps counties, favorable to the organization and seventeen people, six of whom live in Harlan and Phelps counties, who are opposed to the organization. All the owners of the land except two are residents of the state of Nebraska. Afterwards the owners who resisted

the incorporation of the district filed objections upon the grounds of lack of authority in the court, the unconstitutionality of the law, lack of public utility, lack of benefit to the objectors, that the petition was not signed by a majority in interest of resident owners, that a majority of the resident owners are opposed to the incorporation, and that the statements of fact are untrue, excepting as to the names and residence. After a hearing, the court found for the objectors, and dismissed the petition and articles of incorporation "for the reason and on the grounds solely that it does not appear that a majority in interest of the resident owners have made and signed the articles of association, for the reason that they do not reside on the lands or a portion of it sought to be included in the district, and further that they do not reside in the counties in which such lands are situated."

The evidence shows that the body of land which it is proposed to drain consists of a basin or depression which in seasons of long continued and excessive rain becomes filled with water and for which there is no escape or outlet except by seepage or evaporation; that sometimes long periods of years have elapsed without water accumulating to such an extent as to form a pond therein, but that on several occasions within the last 25 or 30 years it has been submerged at some points to a depth of ten feet at the deepest place. The land owned by the petitioners, Munn and Catron, was purchased by them in 1906, when it was covered with water, and for the purpose of forming a drainage district and having it drained. At the time of the hearing, Mr. Munn testified that the last time he saw it, about two months before the hearing, there was no water on the land, and that at the time of the trial he did not know whether it was under water or not. The first point necessary to determine is: Was the petition signed by the requisite number of qualified owners of land? The language of the statute is: "Section 5561. A majority in interest of the resident owners in any contiguous body of swamp or overflowed lands in

this state, situated in one or more counties in this state, may form a drainage district for the purpose of having such lands reclaimed and protected from the effects of water, by drainage or otherwise, and for that purpose may make and sign articles of association," etc. None of the owners, whether favorable or unfavorable, live within the boundaries of the district. The question is: Who are "resident owners"? Must they be residents in the swamp or overflowed lands, residents of the county, or residents of the state? A consideration of other language.in the act referring to residents may aid in determining the meaning which should be attached to these words. Section 5562, relating to the service of process, provides for the issuance of summons and its service as in civil cases, "and in case any owner or owners of real estate in said proposed district are unknown, or are nonresidents, they shall be notified in the same manner as nonresident defendants are now by law notified in actions in the district courts of this state." Section 5565 provides that, if the district is organized, a meeting shall be called of the owners of real estate therein "for the purpose of electing a board of five supervisors, to be composed of the owners of real estate in said district, and a majority of whom shall be resident of the county or counties in which such district is situated." These are the only provisions in the act with reference to the residence of landowners. The objectors take the position that resident owners are persons who reside upon the land included in the drainage district, and cite a Kansas case (*Long v. City of Emporia*, 59 Kan. 46) in support of their contention. A statute required that, before condemnation proceedings might be had, "the city marshal shall serve notice upon each known resident owner of land to be taken." It was objected that it was not shown that the plaintiff was "a known resident owner." The court held that the allegation that he had for more than five years been in the actual possession and the resident owner of land was a sufficient statement that he was

"a known resident owner," and said: "The term 'resident owner' would seem to mean the owner residing on the land sought to be taken; otherwise there is nothing to indicate what the word 'resident' would signify." While, no doubt, this was the proper construction under the circumstances in that case, we are not sure that it applies in this case. If we should hold that no swamp or overflowed land can be drained until the owners residing "in any contiguous body of" such land petitioned, it might defeat the very object and purpose of the law, since the more unfit for cultivation and noxious to the public health such swamp or overflowed land may be, the less likely it is to have any owners residing "in" it. Such a construction of the statute does not seem reasonable. We are inclined to think that the word "resident" in this section should be construed in the ordinary sense in which it is used in legal proceedings as applying to a resident of the state. We are aided in coming to this conclusion by the language used in other sections of the law. The provisions in section 5562 as to service of summons makes the usual distinction between residents and nonresidents of the state, and in section 5565, treating of owners from among whom supervisors may be elected, the class of owners of real estate in the district is narrowed by the provision that a majority of the board of supervisors shall be residents of the county or counties in which the district is situated. If the petition must be signed, as appellants contend, by persons residing within the district who own a majority interest in the lands, why would it be necessary to provide that a majority of the board of supervisors must be residents of the county? This is not an enlargement, but a restriction, of the class of persons eligible to election to that position, and the object was to insure that persons in the locality affected should form a majority of the board. We think the language of the statute, if transposed as follows, would express the true intent of the legislature: A majority in interest of the owners resident in this state

of any contiguous body of swamp or overflowed lands situated in one or more counties in this state, etc. The qualifying words "in this state" evidently modify "resident owners," since the lands to be affected are required by the next clause to be lands "situated in one or more counties in this state," and the words "in this state," following the words "swamp or overflowed," unless understood to modify owners, would be tautologous.

We are fully satisfied that the strict and technical construction of the term "resident owners" contended for by the appellees would in many instances defeat the object and purpose of the law, and that it is our duty to adopt the more liberal and, as we think, the more reasonable and logical interpretation, in such manner as to uphold the promotion of enterprises for the public benefit. *Fass v. Seehawer*, 60 Wis. 525. Of the four signers favorable to the incorporation, only one claims to reside in the county where it is proposed to organize the district. The statute requires the election of "a board of five supervisors, to be composed of owners of real estate in said district, and a majority of whom shall be resident of the county or counties in which such district is situated." One of the grounds assigned by the district court for refusing to allow the incorporation is that the petitioners do not reside in the counties in which the lands are situated. The court must have had in mind this section of the statute. Unless the objectors should change their minds and consent to act, it would be impossible to organize the district for lack of supervisors. Only one of the petitioners avers he is a resident of the county in which the proposed district lies. We believe the district court was justified in refusing to declare the district organized until it was made apparent in some way that there were sufficient owners of land within the district residing in Harlan and Phelps counties from whom three members of a board of supervisors might be elected. No such number signed the proposed articles. The only petitioner who claims to be a resident of either

county is a single man whose place of business is far removed from the locality, and whom the district court of that county probably concluded was not a *bona fide* resident of that county. At least, his finding, when considered in connection with the evidence on this point, cannot be said to be unsupported.

Considering all the circumstances of the case as disclosed by the evidence, we cannot say that the findings of the district court are unsupported, and for that reason we are not justified in setting the same aside. The judgment of the district court is

AFFIRMED.