483 P.2d 532

**CITY OF SCOTTSDALE, a municipal corporation; League of Cities and Towns, an association; Herb G. Caywood, as a taxpayer of Maricopa County, Arizona, Appellants,**

v.

**McDOWELL MOUNTAIN IRRIGATION AND DRAINAGE DISTRICT, a purported Irrigation district; Board of Supervisors of Maricopa County and L. Alton Riggs, Barney Burns, and William Andrews, as members of and as constituting the Board of Supervisors of Maricopa County, State of Arizona, and Rhea Woodall, as Clerk of said Board of Supervisors, Appellees.**

**No. 10011.**

Supreme Court of Arizona,
In Banc.
March 30, 1971.

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■

Snell & Wilmer by Mark Wilmer, Phoenix, Johnson, Shelley, Roberts & Riggs by J. LaMar Shelley, Mesa, Richard E. Filler, City Atty., City of Scottsdale, Scottsdale, for appellants.

B. Wells O'Brien, Gen. Counsel, McDowell Mountain Irrigation Dist., Ryley, Carlock & Ralston, Sp. Counsel, Phoenix, Wilson, Jones, Morton & Lynch, Sp. Counsel, San Mateo, Cal., Lesher & Scruggs, Sp. Counsel by Robert O. Lesher, Tucson, Albert I. Firestein, Deputy County Atty., Phoenix, for appellees.

WILLIBY E. CASE, Jr., Judge of the Court of Appeals.

This is an appeal from an order granting appellees' motion for summary judgment in an action wherein appellants sought to test the validity of the organization of the McDowell Mountain Irrigation and Drainage District (hereinafter referred to as the District).

Two issues are presented on appeal. First, do any or all of the appellants have standing to test the validity of the District's organization? Second, did the jurisdictional prerequisites exist for the Board to authorize the organization of the District?

The facts necessary for a determination of these issues are as follows.

In the summer of 1968 a petition was filed with the Maricopa County Board of Supervisors (hereinafter referred to as the Board), pursuant to Title 45, Chapter 6, A.R.S., seeking the organization of certain described land into the McDowell Mountain Irrigation and Drainage District. The land consisting of 11,420 acres was located within Maricopa County and part thereof was situated within six miles of the Scottsdale city limits. The petition was signed by Transamerica Title Insurance Company of Arizona, holding 11,335 acres, as trustee for Four Peaks Cattle Company, a partnership; Santa Lucia Corporation, an Arizona corporation; Page Land and Cattle Co., an Arizona corporation; and McCulloch Properties, Inc., a California corporation. Additionally, nine couples signed the petition, each owning 5 acres, and McCulloch Properties also signed as an individual owner of 40 acres.

The initial hearing on the petition was held before the Board on July 15, 1968, at which time the League of Cities and Towns, an association (hereinafter referred to as the League) and the City of Scottsdale, a municipal corporation, (hereinafter referred to as Scottsdale) appeared in opposition thereto. A further hearing was held on July 22, 1968, which concluded with the Board granting the petition for the organization of the District.

On December 31, 1968, appellants filed a petition for Writ of Mandamus or in the alternative, Writ of Certiorari or alternatively, Writ of Quo Warranto in the Maricopa County Superior Court. On January 16, 1969, appellees filed a Petition for Writ of Prohibition with this Court to stay the Superior Court proceedings, which Writ was denied. Thereafter on April 3, 1969, the Board filed their response and on April 18, 1969, the District filed a Motion to Dismiss on the grounds that the petition failed to state a claim for which relief could be granted and that appellants lacked standing to bring said action. On July 17, 1969, the Court granted appellees' motion as to the League and Caywood and denied said motion as to Scottsdale.

On September 12, 1969, the District filed their Answer, renewed their Motion to Dismiss on the ground that Scottsdale lacked standing and moved for Summary Judgment on the ground that there was no triable issue of fact. After reviewing the pleadings, a certified copy of the proceedings before the Board, memoranda of law and oral argument of counsel, the Court on November 25, 1969, granted said motions. The Court's order was reduced to judgment and filed on December 16, 1969. Appellants now seek review of that judgment.

1. DO ANY OR ALL OF THE APPELLANTS HAVE STANDING TO TEST THE VALIDITY OF THE DISTRICT'S ORGANIZATION?

■ It is unquestionably the law in Arizona that in the absence of a special appeal statute no one other than the Attorney General or the County Attorney can maintain an action to test the validity of a Board of Supervisor's action in authorizing the creation of a political subdivision. Faulkner v. Board of Supervisors, 17 Ariz. 139, 149 P. 382 (1915); Skinner v. City of Phoenix, 54 Ariz. 316, 95 P.2d 424 (1939). Accordingly, appellants' standing must be based on either of two special appeal statutes relating to irrigation districts. The two pertinent statutes, Sections 45–1512 and 45–1522 A.R.S. are set out below:

"§ 45–1512. Remedy of persons aggrieved by board order

Any person aggrieved by the action of the board of supervisors in the hearing on the petition may apply for a writ of mandamus to the superior court of the county in which the hearing was conducted, and if the court grants and issues an alternative writ it shall be heard within twenty days from its issuance, which period shall be excluded from any limitation within which the board is required to act upon the petition."

"§ 45–1522. Testing validity of organization of district by quo warranto

Within one year after the date of filing the order of the board of supervisors declaring the district organized, any person affected thereby may commence quo warranto proceedings to test the validity of the organization of the district, but no such proceedings or other action whatever shall be commenced after such year period."

■ It is apparent that Section 45–1512 A.R.S. is inapplicable to the instant action. Said section's placement, within Chapter 6 of Title 45, immediately following provisions outlining the hearing procedure before the Board, indicates its applicability to interlocutory appeals from procedural defects in the hearing itself. The wording of the statute "any person aggrieved * * * in the hearing" affirms this position. Also, the statute's grant of an extension of time for the Board to act on the petition indicates that an appeal hereunder is envisioned to take place before the Board's final decision on the petition.

■ The present proceedings appear to be sanctioned by Section 45–1522 A.R.S. Appellees nonetheless argue that Section 45–1522 A.R.S. must be read in pari materia with Title 12, Chapter 11, Article 3, A.R.S., which delineates the general quo warranto law in Arizona. If said sections were read as appellees urge, only the Attorney General or the County Attorney could maintain the present action. We find this result untenable.

This Court has long held that in construing different statutes dealing with similar subject matter effect should be given to all such statutes if at all possible. Gideon v. St. Charles, 16 Ariz. 435, 146 P. 925 (1915). We would ignore this rule of construction if we followed appellees' argument since an "affected person" could, notwithstanding the existence of Section 45–1522 A.R.S., request the Attorney General or County Attorney to commence quo warranto proceedings pursuant to Section 12–2041 et seq., A.R.S. Section 45–1522 A.R.S. is a special appeals statute as contemplated in Faulkner v. Board of Supervisors, supra,

and Skinner v. City of Phoenix, supra, and specifically authorizes "any person affected thereby" to prosecute a quo warranto action to test the validity of the organization of the district.

■ The Court must next determine whether any of appellants qualify under Section 45–1522 A.R.S. as "any person affected." Statutes of this type are remedial and must be construed liberally to promote the ends of justice. Barry v. Phoenix Union High School, 67 Ariz. 384, 197 P.2d 533 (1948).

■ In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970), the Supreme Court defined the standing question as "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute * * *." In the instant case Scottsdale appears to be within the "zone" while the League and Caywood are outside the zone.

The League claims to be affected by the Board's decision since the Board's action will enable a town to be formed which will be permitted to issue bonds without the statutory controls imposed on other bonds issued by other towns and cities. This alleged harm is remote and speculative, and further lacks the concrete adverseness necessary to assure proper presentment of the pertinent issues.

■ Caywood, a taxpayer of Maricopa County relies on Henderson v. McCormick, 70 Ariz. 19, 215 P.2d 608 (1950), to confer standing. In that case this Court held in part, "[e]quity does not interfere with the action of administrative officers of a municipality at the suit of a taxpayer unless the taxpayer and his class have sustained or will sustain some pecuniary loss * *." Caywood asserts that the proposed urban population of 75,000 will force Maricopa County to expend funds to provide "sanitation, police protection, including traffic control and control of crime and vice * * *." This allegation shows no present or past pecuniary loss suffered by Mari-

copa County taxpayers. Any future pecuniary loss as hypothesized by Caywood is so speculative and remote that standing based thereon cannot be conferred.

■ The City of Scottsdale bases its standing on the provisions of Section 9-101.01, A.R.S. This statute defines urbanized area as that land within six miles of an incorporated city or town having a population of five thousand or more. The statute then provides that no territory within an urbanized area will be incorporated as a city or town (two exceptions mentioned are inapplicable herein). A segment of the District is located within the urbanized area adjacent to Scottsdale. The intent of the statute is to give existing cities and towns area in which to expand without conflicts from newly created municipalities. Thus, Scottsdale's interest is real and immediate and within the zone of interests to be protected by Section 45-1522 A.R.S.

Appellees argue that Section 9-101.01 A.R.S. is inapplicable since the District is not an "incorporated city or town" as these words indicate in the statute. We would concur in this interpretation under normal circumstances, but where the avowed purpose of the District is to create a planned urban community we must follow the spirit of the statute for the purpose of determining standing by treating the formation of the District as similar to the incorporation of a city or town.

2. DID THE JURISDICTIONAL PREREQUISITES EXIST FOR THE BOARD TO AUTHORIZE THE FORMATION OF THE DISTRICT?

■ The Court's role in the creation of cities, towns or irrigation districts is limited to determining whether the jurisdictional facts necessary for the Board to act existed. Parnell v. State, ex rel. Wilson, 68 Ariz. 401, 206 P.2d 1047 (1949), State ex rel. Pickrell v. Downey, 102 Ariz. 360, 430 P.2d 122 (1967).

The statutes defining the jurisdictional prerequisites pertinent herein are as follows:

"§ 45-1503. Organization of district

A. When a majority of the holders of title or evidence of title, including receipts or other evidence of the rights of entrymen on lands under any law of the United States or of this state, to lands in a designated area desire to provide for the irrigation of lands in the area, they may propose the organization of an irrigation district under the provisions of this chapter. When organized the district shall have all powers conferred by law upon irrigation districts."

"§ 45-1505. Petition for organization; inclusion of power of drainage

A. For the purpose of organizing an irrigation district as provided by this chapter, a petition signed by a majority of the resident owners of real property to which they hold title or evidence of title in the proposed district shall be filed with the board of supervisors of the county in which the greater portion of the proposed district is located. Each signer of the petition shall describe the lands to which he holds title or evidence of title in the proposed district."

The jurisdictional facts in dispute are whether an irrigation district can be formed for the purpose of developing a planned urbanized community, and whether a petition required by Section 45-1505 A.R.S. is proper when signed by owners not residing on the property to be included within the district.

■ Section 45-1505 A.R.S. requires that the petition for organization of the District be "signed by a majority of the resident owners of real property". Appellants urge that the signers must own and reside on the land to be included within the District. By adopting this construction we would require owners of arid land to live thereon before irrigation of same took place, a practical impossibility in this

State. Such interpretation of the statute would defeat the Irrigation Districts Act's very purpose. See, In re: Drainage District No. 1, 84 Neb. 487, 121 N.W. 462 (1909).

Actually, the term "resident" without some limiting locality is of slight value. The term could refer to a resident within any political subdivision. We have seen that the term cannot be limited to the land within the proposed District. When no limiting locality is designated we deem the term to refer to a resident of the state, the largest jurisdiction of the sovereign in this case. See, Burdick v. Harbor Springs Lumber, 167 Mich. 673, 133 N.W. 822 (1911).

The final issue to be decided is whether an irrigation district can be formed wherein the primary intent is not to irrigate arid lands but to develop a planned urbanized community.

In Post v. Wright, 37 Ariz. 105, 289 P. 979 (1930), this Court stated:

"* * * Petitions for the organization of districts must always indicate the purpose of the organizers to be to provide water for the irrigation of their lands. * * *"

The Court further declared:

"It goes without saying that an irrigation district may not enter into business of laying out and promoting townsites. Such business is foreign to any of the purposes for which it is organized. * * *"

Appellees indicate that Post would control had it not been abrogated by a statutory amendment to what is presently Section 45–1578 A.R.S. Appellees cite the 1931 Amendment to Section 3341, Rev. Code 1928, Ch. 98, § 2 (1931) Ariz.Laws 10th Reg.Sess. 242, which added to the District's delineated powers the power "to engage in any and all activities, enterprises and occupations within the powers and privileges of municipalities generally". This language, adopted after Post, persists today.

Appellees' reliance on the above amendment is misplaced as they fail to appreciate the significance of the language which prefaces the above delegation of power and all other powers of the District. The preface recites: "In order to accomplish the purposes of the district the board may:" (then follows the individual powers). Obviously, the power to engage in activities of municipalities generally is proper only when acting pursuant to the purpose of irrigating arid lands.

Appellees further urge that irrigation be interpreted so as to encompass providing water for city needs such as watering lawns. The cases cited by appellees for this proposition do not deal with irrigation districts and accordingly are inapplicable. In Post this Court quoted at length from the California case of In re Central Irrigation District, 117 Cal. 382, 49 P. 354 (1897), which discussed the Wright Act. That case indicated that a drugstore owner, a blacksmith or a town resident could not "desire" to irrigate their lands in the sense the word was used in the Wright Act. That Court further noted that the purpose of the Irrigation District Act was to improve agricultural and farming lands by conveying an adequate supply of water to the soil.

In reviewing the granting of a motion for summary judgment we must view the record in the light most favorable to the party against whom the judgment was granted. Lowery v. Universal Match Corporation, 6 Ariz.App. 98, 430 P.2d 444 (1967). If there exists one material issue of fact we must reverse. Viewing the evidence in this light we find at least two issues. First, was the petition signed by a majority of the resident owners of real property, and secondly, did the organizers have the requisite objective in creating the District.

Accordingly, we reverse and remand for proceedings not inconsistent with this opinion.

HAYS, V. C. J., and UDALL, LOCK-WOOD and CAMERON, JJ., concur.

NOTE: FRED C. STRUCKMEYER, Jr., Chief Justice, having disqualified himself from participating in the determination of this case, WILLIBY E. CASE, Jr., Judge of the Court of Appeals, was called to sit in his stead.