NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CHRISTINE LYONS, et al., *Plaintiffs/Appellees,*

*v.*

CITY OF PHOENIX, et al., *Defendants/Appellees,*

*v.*

CFS RETAIL, LLC, et al., *Real Parties in Interest/Appellants.*

No. 1 CA-CV 25-0299

FILED 03-27-2026

---

Appeal from the Superior Court in Maricopa County
No. CV 2023-013529
The Honorable John L. Blanchard, Judge

**REVERSED**

---

COUNSEL

Richards & Moskowitz, PLC, Phoenix
By William A. Richards
*Counsel for Plaintiffs/Appellees*

Phoenix City Attorney's Office, Phoenix
By Cris A. Meyer
*Counsel for Defendants/Appellees*

Gammage & Burnham, PLC, Phoenix
By Cameron C. Artigue, Jacqueline E. Marzocca, and Sean Krieg
*Counsel for Real Parties in Interest/Appellants*

---

## MEMORANDUM DECISION

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

---

**J A C O B S**, Judge:

**¶1** CFS Retail, LLC ("Copperstate") appeals the superior court's ruling reversing the Board of Adjustment's ("Board") grant to it of a use permit and variance to operate a marijuana dispensary. The Board's grant of the use permit and variance in turn rested on the Zoning Administrator's prior informal interpretation of Phoenix Zoning Ordinance § 623(D)(124) (the "Interpretation"). Copperstate argues that plaintiffs Christine Lyons and Heritage Heights Block Watch ("Homeowners") lack standing to challenge the Interpretation and, regardless of standing, the Board's decision should be upheld on its merits. Homeowners argue they have standing and that the Board's decision — which relied on the Interpretation — exceeded its authority. We agree with Copperstate because none of the plaintiffs are "persons aggrieved" under A.R.S. § 9-462.06(K). Accordingly, we reverse and reinstate the Board's decision.

## FACTS AND PROCEDURAL HISTORY

**A.** **Copperstate Seeks to Open a New Dispensary Location and Obtains Pre-Clearance from the City of Phoenix.**

**¶2** Copperstate sought to open a marijuana dispensary near 32nd Street and Shea Boulevard in Phoenix. The proposed site is in an intermediate commercial zoning district, in which marijuana dispensaries are permitted uses. Phoenix Zoning Ordinance § 623(D)(124). Marijuana dispensaries must comply with certain zoning regulations to operate legally. *See id.* Relevant here, marijuana dispensaries must obtain a use permit and be located more than (a) 500 feet from certain residentially zoned districts and (b) 1,320 feet from a place of worship. Phoenix Zoning Ordinance § 623(D)(124)(a), (f), (h).

**¶3** As a preliminary step, Copperstate sought advice about any zoning limitations from the City of Phoenix (the "City"). *See* Phoenix

2

Zoning Ordinance § 307(A)(4). In January 2023, the City sent Copperstate a letter confirming it was eligible to apply for a use permit to operate its marijuana dispensary at the proposed location. The letter advised Copperstate it would also have to apply for a variance because it is within 500 feet of residential zoning, but that so long as "the use permit and/or variances are approved and the site complies with all other requirements, then the dispensary facility would be permitted to operate." There is no actual residence within 500 feet of the proposed dispensary location. The residentially-zoned area requiring a variance is a historic anomaly in the middle of Route 51 that was never rezoned after the freeway's construction.

**B.**      **Copperstate Applies for a Use Permit and Variance, the City Holds Public Hearings on Copperstate's Application, and the City Grants Copperstate's Application.**

**¶4**      Copperstate applied for a use permit and variance in February 2023. Some who spoke at the initial public hearing in March 2023 opposed Copperstate's application. Those who spoke, including Christine Lyons, cited generalized concerns, including delayed notice of the hearing, safety, the location's proximity to minors because of schools that are nearby (but located outside of the quarter mile boundary required by the zoning ordinances), and decreased property values. The hearing was continued to May 2023 to allow for further public input. Copperstate was unsuccessful in its efforts to assuage opponents' concerns before the May hearing.

**¶5**      At the May 2023 hearing, members of the public testified for and against Copperstate's application. For the first time, one speaker raised the issue that a church, known as Victory Chapel, was less than 1,320 feet away from the proposed dispensary location. Counsel for Copperstate explained that the church had not obtained a certificate of occupancy, and that given the Interpretation, facilities such as Copperstate "do[] not need to comply with the applicable separation requirement from a protected use if the protected use is not permitted pursuant to a validly issued Certificate of Occupancy." Thus adhering to the Interpretation, the hearing officer approved Copperstate's application for a use permit and variance.

**C.**      **On Appeal, the Board of Adjustment Affirms the Hearing Officer's Decision to Grant Copperstate's Application.**

**¶6**      Homeowners appealed the hearing officer's decision to the Board. Homeowners' appeal did not specifically challenge the validity of the Interpretation, but rather restated their previously raised concerns about proximity to schools, their neighborhood, and the church. The pastor

of the church submitted a letter expressing concerns about teen marijuana use but did not attend or otherwise participate in the proceedings.

¶7            The Board held a hearing on August 3, 2023 addressing Homeowners' appeal. The zoning officials explained that "[t]he church did not have a certificate of occupancy or any permits associated with the establishment of that use there," and accordingly, for the purposes of separation requirements under the zoning ordinances, the church was "not a legally established use." The Board discussed the validity of the Interpretation at length, ultimately reasoning the City needed a way to confirm established uses when making zoning decisions, and that "through these interpretations, over the years, the [C]ity has drawn that line as a certificate of occupancy is required," and recognized that "businesses rely on that interpretation." The Board also confirmed that the Interpretation applies to all established uses, not just churches, explaining the Interpretation "does not have anything to do with the gospel and the church . . . This has to do with the laws of the City of Phoenix."

¶8            The Board upheld the hearing officer's decision and denied the Homeowners' appeal.

### D.        The Superior Court Reverses the Board's Decision.

¶9            Homeowners filed a statutory special action in the superior court challenging the Board's decision under A.R.S. § 9-462.06(K). The complaint alleged "Ms. Lyons and her property will be uniquely and negatively impacted by the Board's approval of a use permit and variance" to Copperstate because of "increase[d] traffic and traffic dangers," "reduce[d] parking and accessibility to existing businesses," and "adverse implications for personal and property safety within the Block Watch boundaries." The complaint went on to describe more generalized harms, including Homeowners' "rights and interests regarding enforcement of all relevant provisions of the Zoning Ordinance of the City of Phoenix for and against all other properties and property owners and occupiers in their vicinity or neighborhood." Specifically, Homeowners claimed they had an interest in the enforcement of Phoenix Zoning Ordinance § 623(D)(124)(h), which requires a dispensary to be more than 1,320 feet away from a place of worship.

¶10           The court rejected Copperstate's argument that Homeowners lacked standing and instead found Homeowners were "aggrieved persons" because they "are active in protecting property values and interests." The court further concluded the Board's grant of Copperstate's application was

"arbitrary and capricious and an abuse of discretion" because it did not apply Phoenix Zoning Ordinance § 623(D). The court thus reversed the Board's grant of Copperstate's application and granted Homeowners their costs under A.R.S. § 12-341.

¶11 Copperstate timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-2101(A)(1), -120.21(A)(1).

## DISCUSSION

### I. Homeowners Are Not "Person[s] Aggrieved" Under A.R.S. § 9-462.06(K).

¶12 "Whether a party has standing is a question of law we review de novo." *Pawn 1st, L.L.C. v. City of Phoenix*, 231 Ariz. 309, 311 ¶ 11 (App. 2013).

¶13 Our inquiry into Homeowners' standing begins with "whether the statute in question authorizes review at the behest of the plaintiff." *Scenic Ariz. v. City of Phx. Bd. of Adjustment*, 228 Ariz. 419, 422 ¶ 7 (App. 2011) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972)). While statutes authorizing judicial review of an administrative decision are "construed liberally to promote the ends of justice," *id.* (quoting *City of Scottsdale v. McDowell Mountain Irr. & Drainage Dist.*, 107 Ariz. 117, 121 (1971)), that liberal construction is limited by "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute," *id.* at 423 ¶ 11 (quoting *McDowell Mountain*, 107 Ariz. at 121).

¶14 *Scenic Arizona* shows why Homeowners lack standing. There, we found a proposed billboard placement interfered with plaintiffs' interests protected by the Arizona Highway Beautification Act ("AHBA"), which "was adopted to promote 'the reasonable, orderly, and effective display of outdoor advertising,' while also promoting 'the safety and recreational value of public travel and [preserving] natural beauty.'" *Id.* at 424 ¶ 11. But "[o]rdinary zoning ordinances do not create the same special interest." *Arcadia Osborn Neighborhood v. Clear Channel Outdoor, LLC*, 256 Ariz. 88, 94 ¶ 18 (App. 2023). Unlike the AHBA, the purpose of the zoning ordinance Homeowners seek to enforce is "to provide for a wide range of types of commercial activity within the district." Phoenix Zoning Ordinance § 623(A). The interests Homeowners seek to vindicate are not within the zone of interests this ordinance is designed to protect and regulate.

¶15        As we recognized in *Arcadia Osborn*, "*Scenic Arizona* does not provide standing for [plaintiffs] to challenge an ordinary zoning decision absent allegations of a particularized harm, injury, or damages distinct from that suffered by the public." 256 Ariz. at 94 ¶ 18. The damages Homeowners allege, including infringement upon their "rights and interests regarding enforcement of all relevant provisions of the Zoning Ordinance of the City of Phoenix for and against all other properties and property owners and occupiers in their vicinity or neighborhood," are precisely what *Arcadia Osborn* said isn't enough for standing — they are not particularized or distinct from those suffered by the general public. *See id.*

¶16        Homeowners' proximity to the proposed dispensary site doesn't make particularized any interest they claim in the enforcement of the zoning ordinance. *Id.* at ¶ 12 (Even where "a plaintiff has suffered the same kind of harm or interference as the general public but to a greater extent or degree," this does not rise to the level of "particularized harm causing palpable injuries" and accordingly is "insufficient to confer standing."); *see also Scenic Arizona*, 228 Ariz. at 425 ¶ 15 (reaffirming "the well-established principle that when challenging a governing board's zoning decision, a plaintiff must allege particularized injury to his or her *own property*").

¶17        And to the extent Homeowners suggest the alleged injury to their property is different from or more than that suffered by the general public because they live between a 0.8- and 1.4-mile drive from the dispensary site, that argument fails. They live much farther than would tend to support claims of particularized, personal harm from a zoning decision. *See, e.g.*, *Blanchard v. Show Low Plan. & Zoning Comm'n*, 196 Ariz. 114, 118 ¶¶ 21-24 (App. 1999) (finding 750 feet from relevant property close enough to show "special damages that will be more substantial than those suffered by the community at large," but 1,875 feet, given "general allegations of harm" such as "increased traffic and noise," too far to support standing). Homeowners' residences are too far from the dispensary to support a finding that their alleged injuries relating to traffic dangers, parking, accessibility to existing businesses, and decreased personal safety within the Block Watch boundaries are "special damages that will be more substantial than those suffered by the community at large." *Id.*

¶18        Significantly, the superior court's reasoning rests entirely on the church being less than 1,320 feet from the dispensary site, which underscores the lack of particular, personal injury to Homeowners here. Its ruling granting relief to Homeowners lacks reference to, or reliance on, the legal basis of Homeowners' claimed injury other than their generalized

interest in enforcing zoning ordinances. For the reasons we have explained, Homeowners' choice to be "active in protecting property values and interests" does not make them "person[s] aggrieved" under A.R.S. § 9-426.06(K). They thus lack standing to challenge the Board's decision. While there are also potential infirmities in the superior court's analysis of the merits, given our decision concerning standing, we do not address them.

## II. We Decline to Award Copperstate's Attorneys Fees Under the Private Attorney General Doctrine.

¶19      "To receive an award of attorneys' fees under the private attorney general doctrine, the prevailing party must 'vindicate[ ] a right that (1) benefits a large number of people, (2) requires private enforcement, and (3) is of societal importance.'" *Lane v. City of Scottsdale*, 258 Ariz. 460, 469 ¶ 30 (App. 2024) (quoting *Ansley v. Banner Health Network*, 248 Ariz. 143, 153 ¶ 39 (2020)).

¶20      While we appreciate the effect of Copperstate's efforts in "vindicat[ing] the authority of Arizona municipalities to clarify and fill gaps in their zoning ordinances via zoning interpretations," its efforts here serve primarily private rather than public purposes and thus do not justify an award of attorneys' fees under the Private Attorney General Doctrine. *See Chavarria v. State Farm. Mut. Auto. Ins. Co.*, 165 Ariz. 334, 337-38 (App. 1990) (declining to award fees under the Private Attorney General Doctrine where plaintiff "pressed her claim throughout this case in the hope of recovering a large award of damages for herself, not in the hope of directing substantial benefits, financial or otherwise, to the general public").

## CONCLUSION

¶21      We reverse the superior court's decision and reinstate the Board's decision affirming the grant of a use permit and variance to Copperstate. We reverse the superior court's grant of costs to Homeowners under A.R.S. § 12-341. We grant Copperstate its costs as the prevailing party in this appeal, subject to its compliance with ARCAP 21.

