744 P.2d 468

**Harry W. PORTERFIELD, Contestor-Appellant,**

v.

**Dale L. VAN BOENING, Contestee-Appellee.**

**1 CA–CIV 9443.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 8, 1987.

Meyer, Hendricks, Victor, Osborn & Maledon, P.C. by Donald W. Bivens, Jon M. Sands, Phoenix, for contestor-appellant.

Fennemore Craig by Calvin H. Udall, Phoenix, for contestee-appellee.

## OPINION

FROEB, Judge.

This appeal concerns the voting qualifications of persons who vote in irrigation district elections. The specific question is whether corporations and other legally created entities owning land in irrigation districts in Arizona must designate Arizona residents to cast their votes in district elections. The trial court held that neither the state statutes nor the state constitution requires these vote casters to be Arizona residents. We affirm, holding that A.R.S. § 48–2917, the statute authorizing corporations and other juristic entities to vote in irrigation district elections, does not require designees of landowning entities to be Arizona residents. Furthermore, Ariz. Const. art. 7, § 2, the constitutional provision setting forth voter qualifications in general elections, does not apply to limited purpose elections such as are held in irrigation districts.

## FACTS

In December, 1986, an election for a position on the board of directors was held in the Harquahala Valley Irrigation District. The candidates were Harry W. Porterfield (appellant), Dale L. Van Boening (appellee), and Alan B. Melton. The total 44 votes cast in the election were distributed as follows:

| | |
|---|---|
| Van Boening | 21 |
| Porterfield | 12 |
| Melton | 11 |

Porterfield contested the election results in the Maricopa County Superior Court on the ground that the six designees who cast the votes of 20 California partnerships and corporations were not residents of Arizona, and therefore the votes violated A.R.S. § 48–2917 and Ariz. Const. art. 7, § 2. The 20 challenged votes had been cast for Van Boening. Porterfield concluded that he should be declared the winner of the election as the recipient of the most legal votes. The trial court disagreed and entered judgment in favor of Van Boening.

## AN OVERVIEW OF IRRIGATION DISTRICTS

As the West was settled in the late 1800's, those attempting to farm the land realized that irrigation systems were needed to make the effort successful. It was readily apparent that building irrigation systems efficiently was too expensive for individual farmers. Mormon settlers formed cooperatives to achieve these goals, but for most, an organizational structure provided by statutory law was needed to bring about irrigation of lands on a community scale.

In 1887, California led the way for the formation of special districts with the passage of the Wright Act. The Wright Act, as amended in 1897, provided for the formation of irrigation districts as political subdivisions of the state with sufficient powers to develop strong water systems. Irrigation districts were empowered to levy property assessments and issue bonds to finance their operations. Irrigation districts were controlled locally by boards of directors and were granted tax exempt status for their property and their bonds. The Wright Act also gave irrigation districts the power to include unwilling landowners within their boundaries, to acquire land by eminent domain, and other powers necessary to construct the systems and deliver water. A detailed discussion of the Wright Act is provided in Special Project, *Desert Survival: The Evolving Western Irrigation District*, 1982 Ariz.St.L.J. 377.

In Arizona, drainage districts were first provided for by statute in 1912, and eventually irrigation districts were authorized in 1915. The Irrigation District Act as amended in 1921 forms the basis for the statutory framework that exists today. *See* A.R.S. §§ 48–2901 to –3256. The Irrigation District Act provided for financing through loans from the federal government

under the Reclamation Act of 1902 or through the direct sale of bonds.

Initially, the Arizona Supreme Court held that irrigation districts were not municipal corporations or political subdivisions of the state. *Day v. Buckeye Water Conservation & Drainage Dist.*, 28 Ariz. 466, 474, 237 P. 636, 639 (1925); *see also Maricopa County Municipal Water Conservation Dist. No. 1 v. LaPrade*, 45 Ariz. 61, 73–77, 40 P.2d 94, 99–100 (1935). The Arizona Constitution was amended in 1940 to add art. 13, § 7, which declared that irrigation and other special assessment districts were political subdivisions of the state and that they were "vested with all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions...." Ariz. Const. art. 13, § 7.

The Arizona Supreme Court continued to wrestle with the nature of irrigation districts after the constitutional amendment. The court recognized that irrigation districts had governmental powers, but held that their functions were purely commercial and economic in nature, performed only for the benefit of the district property owners. *Taylor v. Roosevelt Irr. Dist.*, 71 Ariz. 254, 226 P.2d 154 (1950), *opinion adhered to on reh'g by* 72 Ariz. 160, 232 P.2d 107 (1951). The supreme court also held that the primary business functions of water districts were not changed by the constitutional amendment granting them governmental powers. *City of Mesa v. Salt River Project Agr. Imp. & Power Dist.*, 92 Ariz. 91, 103, 373 P.2d 722, 731 (1962), *appeal dismissed*, 372 U.S. 704, 83 S.Ct. 1018, 10 L.Ed.2d 124 (1963). *See also* Leshy, *Irrigation Districts in a Changing West—An Overview*, 1982 Ariz.St.L.J. 345.

With this background, we turn to the specific issues in this case.

## THE CONSTITUTIONAL ISSUE

■ The most serious challenge raised by Porterfield is based on the state constitutional provision that requires voters in general elections to be residents of Arizona. It provides:

No person shall be entitled to vote at any general election, or for any office that is, or hereafter may be, elective by the people, or upon any question which may be submitted to a vote of the people, unless such person be a citizen of the United States of the age of twenty-one years [superseded by U.S. Const. amend. XXVI] or over, *and shall have resided in the State* one year immediately preceding such election....

Ariz. Const. art. 7, § 2 (emphasis added).

Porterfield argues that irrigation district elections are general elections because of the broad powers given the districts to tax, to operate dams, to contract for improvements, to monitor economic growth and development, and to administer political affairs. He also contends that Arizona residents have a greater stake in these decisions in view of the importance of water related issues in Arizona. To support his argument, Porterfield points to the provision in A.R.S. § 48–2901 that declares irrigation districts to be municipal corporations for all purposes.

We find, however, that the special nature of irrigation districts minimizes the importance of their characterization as municipal corporations. The classification of an irrigation district as a municipal corporation does not automatically turn an irrigation district election into a general election. Irrigation districts traditionally serve a small number of landowners in very limited ways. The basic function of an irrigation district is to meter and deliver water to lands within the district and to finance the irrigation system. One of the more significant powers of an irrigation district is to decide how, when, and where physical improvements will be made in the system. While they are public under law, because of the limited functions they perform, irrigation districts are often compared to private enterprises. *See, e.g., Local 266, I.B. E.W. v. Salt River Project Ag. Imp. & Power Dist.*, 78 Ariz. 30, 42–44, 275 P.2d 393, 402–03 (1954); *Taylor v. Roosevelt Irr. Dist.*, 72 Ariz. 160, 164, 232 P.2d 107, 110 (1951). Therefore, we hold that irrigation district elections are not general elec-

tions because of the limited functions they perform.

This conclusion is supported by *Ball v. James*, 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981), and *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973). In both of these United States Supreme Court cases, voter qualification based on land ownership in special assessment districts was upheld. Although those cases were decided on equal protection grounds, their discussion of the limited functions of special assessment districts is instructive to the present case.

In *Salyer*, residents in the Tulare Water District challenged the California law that allowed only landowners to vote in water storage district elections and that apportioned the vote by the assessed value of the land. The Tulare Water District consisted of 193,000 acres of farm land in the Tulare Lake Basin. The district itself was empowered to store, direct, and deliver water, to generate hydroelectric power, and to assess the district lands for the costs involved in accordance with the benefits that accrued to each tract of land.

Four corporations owned almost 85 percent of the land in the district and employed most of the 77 people who lived there. The 189 other landowners in the district owned 2.34 percent of the agricultural acreage in the district. The appellants were some of the smaller landowners, a landowner-lessee, and non-landowning residents of the district. They alleged that the voting scheme denied them equal protection under the fourteenth amendment. Some of the appellants were not allowed to vote in district elections because they were not landowners; others who did own land were given litle weight for their votes because of the relatively small amount of land they owned. Appellants asserted that the voting franchise should be controlled by the one-person, one-vote principle enunciated in *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, *reh'g denied*, 379 U.S. 870, 85 S.Ct. 12, 13 L.Ed.2d 76 (1964).

The Supreme Court in *Salyer* ruled that the *Reynolds* principle had not been violated by the California statutory scheme. The Court held that the benefits, and more importantly, the assessments of the district fell on the landowners to such an extent that it was reasonable to condition voter eligibility on land ownership. The Court went on to explain that although the district had some governmental powers, the district had limited authority and purpose. Thus, the water district election was not the type of popular election where the *Reynolds* requirement was applicable. 410 U.S. at 728–30, 93 S.Ct. at 1229–31, 35 L.Ed.2d at 666–67. In addition, the Court held that the weighted voting system was reasonable because the landowners were assessed in proportion to the amount of land they owned.

The *Salyer* decision did not specifically address the question, raised in this case, of whether nonresidents of the state may vote in irrigation district elections. Nevertheless, the Court referred to the issue in the following manner:

> Under these circumstances, it is quite understandable that the statutory framework for election of directors of the appellee focuses on the land benefited, rather than on people as such.... The franchise is extended to landowners, *whether they reside in the district or out of it,* and indeed whether or not they are natural persons who would be entitled to vote in a more traditional political election. Appellants do not challenge the enfranchisement of nonresident landowners or of corporate landowners for purposes of election of the directors of appellee.

410 U.S. at 730, 93 S.Ct. at 1230, 35 L.Ed.2d at 667 (emphasis added). The residence of the landowners was not at issue in *Salyer*. However, the Court clearly indicates that land ownership is the key to the district voting franchise, and not residency.

The similarities between the present case and *Salyer* are many. In both instances, the qualifications of voters in water district elections are challenged. As in *Salyer*, the appellant is not questioning the voting

franchise of corporations or other juristic entities. The primary difference between the cases is that, in *Salyer*, the residency requirement was not challenged. We find this difference irrelevant because the key factor relied upon by the Supreme Court is that the type of election involved varies so greatly from a traditional election. We similarly hold that irrigation district policies affect the landowners so disproportionately that it is reasonable to tie the voting franchise to land ownership, whether or not the designees of legally created entities are Arizona residents.

The decision in *Ball v. James* also addressed voter qualifications in a water district election. In *Ball*, a class of registered voters brought an action challenging the voter qualifications in the Salt River Project Agricultural Improvement and Power District. All of the plaintiffs lived within the boundaries of the district, but they owned no land or less than an acre of land in the district, and were therefore not allowed to vote in district elections. The plaintiffs alleged that this case was distinguishable from *Salyer* because the Salt River District's powers were so extensive that the district's policies and activities affected all citizens within its boundaries.

The U.S. Court of Appeals for the Ninth Circuit agreed with the plaintiffs. *James v. Ball*, 613 F.2d 180 (9th Cir.1980). The court contrasted the functions of the Tulare Water District with those of the Salt River District. In doing so, it pointed out that the Tulare district was primarily agricultural and that the district income came solely from assessments against landowners. 613 F.2d at 183. The court of appeals found that the Salt River District was significantly different in that it provided electricity for roughly half of the population of Arizona and financed all of its $290 million general obligation bonds with its electricity revenues. 613 F.2d at 184. The court concluded that the burdens of the district did not fall disproportionately on the landowners as they had in *Salyer*. 613 F.2d at 184–85.

The United States Supreme Court reversed, stating that the court of appeals had applied the wrong criteria. It held that the relevant inquiry was whether the Salt River District's functions were more narrow than "those public entities whose more general governmental functions demand application of the *Reynolds* principle." 451 U.S. at 362, 101 S.Ct. at 1816, 68 L.Ed.2d at 158.

The Supreme Court recognized in *Ball* that the governmental functions of the Salt River District included the authority to condemn land, to sell tax-exempt bonds, to exercise influence on flood control and environmental management, and to sell electricity to approximately half of Arizona's population. The court found these differences from the water district in *Salyer* to be constitutionally insignificant. The relevant factor was that, like the Tulare Water District, the Salt River District's primary function was to distribute water according to land ownership. Additionally, the district did not have governmental authority to control people's conduct or even to control the water it delivered. 451 U.S. at 366–67, 101 S.Ct. at 1818–19, 68 L.Ed.2d at 160–61.

The Court held in *Ball* that even though the Salt River District's activities affected all the residents in the district, its primary functions were so narrow that the district's elections were limited purpose elections. The court stated:

> As in *Salyer*, the nominal public character of such an entity cannot transform it into the type of governmental body for which the Fourteenth Amendment demands a one-person, one-vote system of election.
>
> . . . .
>
> The functions of the Salt River District are therefore of the narrow, special sort which justifies a departure from the popular-election requirement of the *Reynolds* case. As in *Salyer*, an aspect of that *limited purpose* is the disproportionate relationship the District's functions bear to the specific class of people whom the system makes eligible to vote.

451 U.S. at 368, 370, 101 S.Ct. at 1819, 1820, 68 L.Ed.2d at 161, 163 (emphasis added).

Obviously, the governmental functions of the Harquahala Valley Irrigation District are far less than those of the Salt River District. If Salt River District elections are not general elections, it follows that Arizona irrigation district elections are likewise not traditional popular or general elections.

A decision of the Colorado Supreme Court is supportive of this position. In *People ex rel. Cheyenne Soil Erosion Dist. v. Parker*, 118 Colo. 13, 192 P.2d 417 (1948), the plaintiff challenged an amendment to the Colorado Soil Conservation Act on the ground that it violated the section of the Colorado Constitution defining voter qualifications (a provision similar to Ariz. Const. art. 7, § 2). The plaintiff contended that the amendment illegally extended the voting franchise in soil conservation districts to nonresidents, corporations, and others.

The Colorado Supreme Court rejected the appellant's argument and stated:

> We have heretofore shown that the [district] is a public corporation and not a municipal corporation. The so-called election upon the question of adopting land use ordinances is not an election within the Constitutional provision, but is more in the nature of an election held by stockholders of a private corporation in the management of its affairs. The question as to whether or not a voter at such election is a "qualified elector," whether he may vote by proxy, or whether such voter is a corporation or an individual, or whether he resides in Colorado or elsewhere, are wholly immaterial. The [district], as the trial court found, was primarily organized for the benefit of the owners of the land in the district. The owners' interests are in no way affected by their place of residence. They have a legal right to own real estate in Colorado regardless of their place of domicile and to take all legal means for the improvement and protection of such property.

*Parker*, 118 Colo. at 20–21, 192 P.2d at 421.

The court explained that the ambitious plans of the soil conservation district could not be carried out without the landowners' consent, and landowners could not be denied a voice in the governance of their land merely because they were corporations or nonresidents of the state. The Colorado court concluded that corporations and nonresidents were not delegated any authority they did not already possess, that is, the "right to manage their property and to determine its use and capability." 118 Colo. at 24, 192 P.2d at 422. Thus, the Colorado Constitution did not prohibit corporations and nonresidents from voting in soil conservation district elections.

We find the reasoning in *Parker* directly applicable to this case. Landowners in Arizona irrigation districts are entitled to determine how their land will be served and assessed. To require that the voting designee under the statute be an Arizona resident is an artificial qualification not mandated by the constitution.

Ariz. Const. art. 7, § 2 refers to offices that are "elective by the people," or questions that "may be submitted to a vote of the people." The voting franchise in irrigation district elections is by its nature based on land ownership and is not based on traditional notions underlying a one-person, one-vote principle. Therefore, we conclude that the Arizona Constitution does not require corporate and partnership designees in irrigation district elections to be Arizona residents. As a correlative of this, we find nothing in the state constitution which would prevent the legislature from authorizing legally created entities to vote in limited purpose elections. *See Roberts v. Spray*, 71 Ariz. 60, 69, 223 P.2d 808, 814 (1950).

## THE STATUTORY ISSUE

■ Porterfield argues alternatively that the designees of the California corporations and partnerships may not vote because they do not meet *statutory* residency requirements. The statute that authorizes corporations and other entities to vote in irrigation district elections is A.R.S. § 48–2917. Section 48–2917 as originally enacted in 1921 provided for voting only by natural persons who held title to land and

set specific age and residency requirements. The statute was later amended in 1933 and in 1976 to allow designees and representatives of certain types of landowning entities to vote in these elections. These amendments paralleled the trend in modern agriculture away from individual ownership of farm land, and allowed other entities to have a voice in irrigation district policy making.

The pertinent parts of A.R.S. § 48–2917 are presently as follows:

A. No person shall be entitled to vote at any election, held under the provisions of this chapter unless:

1. He is a holder of title or evidence of title, including receipts or other evidence of the rights of entry-men on lands under any law of the United States or this state, to land in the district, and has possessed such qualifications for ninety days immediately preceding the date of such election.

2. He has resided continuously for six months immediately preceding the election in the county in which the district or a part thereof is located.

3. He is at least eighteen years of age.

4. He is registered to vote as provided by § 48–3015.

. . . .

C. The administrator or executor of the estate of a deceased person, and the guardian of a minor or incompetent person, appointed and qualified under the laws of the state, may register and cast the vote of the estate or person which he represents. The officer of a corporation who is designated and authorized by a resolution of the board of directors of the corporation may register and cast the vote of the corporation.

. . . .

E. The general partner of a partnership in whose name title to property within the district is vested as holder of title or evidence of title, who is designat-

ed and authorized in writing by all of the general partners, may register and cast the vote of the partnership.

F. The trustee of a trust, and the trustee who is designated and authorized in writing by all the trustees of a trust in which there are more than one trustee, in whose name title to property within the district is vested as holder of title or evidence of title, may register and cast the vote of the trust.

A.R.S. § 48–2917.

Porterfield contends that the voter qualifications enumerated in paragraph (A) of § 48–2917 must be read into paragraphs (C), (E), and (F). In other words, he argues that the designee of a corporation or partnership, the guardian of a minor or incompetent, the executor of an estate, and the trustee of a trust, must be eighteen years old and be a resident of the county.[1] Porterfield argues that this construction of the statute harmonizes all of its provisions and effectuates the legislative intent that all voters in irrigation district elections reside in Arizona.

It is well settled that statutes are to be construed so that no clause is rendered superfluous, void, or contradictory. *Marlar v. State*, 136 Ariz. 404, 411, 666 P.2d 504, 511 (App.1983). The court will also "consider the context of the statute, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 575, 521 P.2d 1119, 1121 (1974).

In this case, paragraph (A) of A.R.S. § 48–2917 cannot be read into paragraphs (C), (E), and (F) without voiding part of paragraph (A). It is obviously not possible for designees of corporations and partnerships personally to hold title to land in the district owned by the entities by whom they are designated. Hence, to rule that the other requirements of paragraph (A) of A.R.S. § 48–2917 must apply to the designees described in paragraphs (C), (E), and

1. The durational requirement of six months' residency in A.R.S. § 48–2917(A)(2) is not at issue in this case. According to *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), the durational requirement would be subject to strict scrutiny if questioned on equal protection grounds.

(F), but not the land owning requirement, is to read away part of the statute. On the contrary, the logical construction of the statute is to read the voting qualifications set forth in each of the paragraphs independently of one another.

Porterfield argues that the title-holding requirement of paragraph (A) need not be read literally. He contends that as long as the designee is close to the decision making process, such as a corporate officer would be, the title-holding requirement would be met. There is no support for Porterfield's distinction between the literal application of the residence requirement on the one hand, and a loose application of the title-holding requirement on the other hand. It is clear the legislature intended land ownership to be an important factor in determining who may vote in irrigation district elections, and that intention is reflected in the 1933 and 1976 amendments to the statute. We conclude that the requirements of paragraph (A) of A.R.S. § 48–2917 cannot be added to the provisions of paragraphs (C), (E), and (F) of the statute.

### SUMMARY

In an irrigation district election, land ownership is more significant than residency because the landowner bears the financial burden of the irrigation system physically located on the land. By reason of the limited functions of an irrigation district, the election of directors in such a district is not controlled by provisions of law relating to general elections, but rather by provisions specially related to irrigation districts. Neither Ariz. Const. art. 7, § 2 nor A.R.S. § 48–2917 requires that designees of corporation and partnership landowners be residents of either the state or county within which the irrigation district is located in order to vote in a district election.

The judgment of the trial court is affirmed.

GREER, P.J., and GRANT, J., concur.