35 P.3d 117

**HOHOKAM IRRIGATION AND DRAINAGE DISTRICT, Pinal County, Arizona, a political subdivision of the State of Arizona, Plaintiff/Counterdefendant/Appellee,**

v.

**ARIZONA PUBLIC SERVICE COMPANY, an Arizona public service corporation, Defendant/Counterclaimant/Appellant.**

**Central Arizona Irrigation and Drainage District, a political subdivision of the State of Arizona; Electrical District No. One, Pinal County, Arizona, a political subdivision of the State of Arizona; Electrical District No. 3, Pinal County, Arizona, a political subdivision of the State of Arizona; Electrical District No. 4, Pinal County, Arizona, a political sub-**

division of the State of Arizona; Electrical District No. 5, Pinal County, Arizona, a political subdivision of the State of Arizona; and Maricopa–Stanfield Irrigation & Drainage District, Pinal County, Arizona, a political subdivision of the State of Arizona, Intervenors/Appellees,

v.

Arizona Public Service Company, an Arizona public service corporation, Defendant/Appellant.

The Harquahala Power District, a political subdivision of the State of Arizona; Aguila Irrigation District, a political subdivision of the State of Arizona; McMullen Valley Water Conservation and Drainage District, a political subdivision of the State of Arizona; Buckeye Water Conservation and Drainage District, a political subdivision of the State of Arizona; Roosevelt Irrigation District, a political subdivision of the State of Arizona; Electrical District No. 7, a political subdivision of the State of Arizona; and Electrical District No. 8, a political subdivision of the State of Arizona, Intervenors/Appellees,

v.

Arizona Public Service Company, an Arizona public service corporation, Defendant/Appellant.

No. 2 CA–CV 01–0026.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 29, 2001.

Reconsideration Denied Feb. 26, 2002.*

* Presiding Judge Brammer, Judge Florez and Judge Pelander participated in the determination

Brown & Bain, P.A., By Paul F. Eckstein and Dan L. Bagatell, Phoenix, for Plaintiff/Counterdefendant/Appellee Hohokam Irrigation.

Osborn Maledon, P.A., By Andrew D. Hurwitz and Warren Stapleton, Phoenix, for Defendant/Counterclaimant/Appellant Arizona Public Service.

Robert S. Lynch, Paul R. Orme, P.C., Phoenix, Mayer, for Pinal County Intervenors/Appellees.

Moyes Storey, By Jay I. Moyes and Steve Wene, Phoenix, for Maricopa County Intervenors/Appellees.

of this matter.

358

## OPINION

FLÓREZ, J.

¶1 Appellant Arizona Public Service Company (APS) challenges the trial court's grant of summary judgment in favor of appellees Hohokam Irrigation and Drainage District, the Pinal County Intervenors,[1] and the Maricopa County Intervenors.[2] APS contends the trial court erred as a matter of law by declaring that Hohokam and the intervenor irrigation districts can furnish electricity to customers outside their district boundaries. Because we agree with APS's position, we reverse the judgment.

## Background

¶2 In Arizona, several entities are authorized by various constitutional provisions and statutes to provide electrical services to customers. Two such entities are public service corporations and irrigation districts.[3] The Arizona Constitution authorizes public service corporations, such as APS, to furnish electricity. Ariz. Const. art. XV, §§ 2 and 3. APS is regulated by the Corporation Commission, which defines APS's area of service by issuing various certificates of public convenience and necessity. A.R.S. §§ 40–281, 40–282.

¶3 Hohokam and the intervenor irrigation districts and water conservation districts (collectively, irrigation districts) were created pursuant to statute. A.R.S. §§ 48–2901 through 48–3256. An irrigation district is created when a majority of landowners in an area "propose the organization of an irrigation district under the provisions of [A.R.S. Title 48, chapter 19]" in order to "provide for the irrigation of lands in the area." § 48–2903(A). The boundaries of the district are determined by the county board of supervisors, § 48–2909, and a majority of the quali-

fied electors in the proposed district must approve its creation. §§ 48–2913, 48–2917, and 48–2921. Irrigation districts expressly derive their authority to furnish electricity from § 48–2978, which permits an irrigation district's board of directors to:

7. Provide for the construction, operation, leasing and control of plants for the generation, distribution, sale and lease of electrical energy, including sale to municipalities, corporations, public utility districts or individuals of electrical energy so generated.

. . . .

15. Provide the district with water, electricity and other public conveniences and necessities, and engage in any and all activities, enterprises and occupations within the powers and privileges of municipalities generally.

## Facts and Procedural History

¶4 In 1972, Hohokam was organized in Pinal County as an irrigation and drainage district to provide irrigation water to its farmer members at the lowest possible cost. In 1997, Hohokam entered the retail power business, planning to use the revenue from that business to reduce its members' water costs. Hohokam buys electrical power in the wholesale market, and Electrical District No. 2(ED2) transmits that power over its grid to service drops and extension lines owned by Hohokam that serve Hohokam's customers. Hohokam's board of directors designated its electrical service area, an area that exceeds its defined irrigation district boundaries.

¶5 APS has provided electrical service in Pinal County continuously since 1930. The boundaries described in APS's certificate of public convenience and necessity issued by the Corporation Commission cover much of the area now within Hohokam's designated

1. The Pinal County Intervenors are Central Arizona Irrigation and Drainage District, Electrical District No. One, Electrical District No. 3, Electrical District No. 4, Electrical District No. 5, and Maricopa–Stanfield Irrigation & Drainage District.

2. The Maricopa County Intervenors are Harquahala Power District, Aguila Irrigation District, McMullen Valley Water Conservation and Drainage District, Buckeye Water Conservation and

Drainage District, Roosevelt Irrigation District, Electrical District No. 7, and Electrical District No. 8.

3. Other such entities include power districts, A.R.S. §§ 48–1501 through 48–1619; electrical districts, A.R.S. §§ 48–1701 through 48–1822; and agricultural improvement districts, A.R.S. §§ 48–2301 through 48–2475.

electrical service area. Thus, APS and Hohokam directly compete for customers in the overlapping areas.

¶ 6 Hohokam filed this action in 1998 for declaratory and injunctive relief. Hohokam asked the trial court to declare that Hohokam has a right to own, operate, and maintain an electrical distribution and transmission system; that APS lacks legal authority to prevent Hohokam from selling electrical power within the boundaries of Hohokam's designated service area; and that recently enacted legislation, A.R.S. § 30-801, did not limit Hohokam's right to furnish electricity. Hohokam also sought to enjoin APS from interfering with Hohokam's furnishing electricity within its electrical area. APS counterclaimed, requesting, inter alia, a declaration that Hohokam could furnish electricity only to Hohokam's irrigation customers and only to those customers within the boundaries of the irrigation district.

¶ 7 The Pinal County Intervenors and the Maricopa County Intervenors, various electrical and irrigation districts, then moved to intervene as a matter of right, asserting an interest in the controversy. After the trial court granted their motions, the intervenors filed complaints for declaratory relief against APS, raising essentially the same claims as Hohokam had, as well as other claims.

¶ 8 All parties then moved for summary judgment. After oral argument, the trial court granted summary judgment without comment against APS and in favor of Hohokam, the Pinal County Intervenors, and the Maricopa County Intervenors. This appeal followed.

### Discussion

¶ 9 Much of the debate in this controversy centers around the constitutional and statutory provisions that confer on irrigation districts the status of municipalities. We review issues of statutory interpretation and constitutional law de novo. *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, 972 P.2d 658 (App.1998).

¶ 10 Article XIII, § 7, of the Arizona Constitution, adopted in 1940, provides:

Irrigation, power, electrical, agricultural improvement, drainage, and flood control districts, and tax levying public improvement districts, now or hereafter organized pursuant to law, shall be political subdivisions of the State, and vested with all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions under this Constitution or any law of the State or of the United States ....

Section 48-2901 provides that "[a]ll irrigation districts organized under the laws of this state are declared to be municipal corporations for all purposes" and that, "[u]nder the laws of this state affecting or relating to irrigation districts[,] such irrigation districts shall be deemed municipal corporations in the construction and application · thereof." And, as noted in paragraph three above, in order to accomplish the purposes of the district, an irrigation district's board of directors may "[p]rovide the district with water, electricity and other public conveniences and necessities, and engage in any and all activities, enterprises and occupations within the powers and privileges of municipalities generally." § 48-2978(15).

¶ 11 Hohokam and the intervenors reason that, because article II, § 34, of the Arizona Constitution authorizes a municipality to engage in industrial pursuits, including selling electricity outside its municipal boundaries, *see Crandall v. Town of Safford,* 47 Ariz. 402, 56 P.2d 660 (1936), it follows that irrigation districts may do the same. In *Maricopa County v. Maricopa County Municipal Water Conservation District No. 1,* 171 Ariz. 325, 830 P.2d 846 (App.1991), Division One of this court accepted a similar argument. In that case, Maricopa County had filed a declaratory action against a water conservation district to resolve a dispute over entitlement to vehicle fees collected by the county at a regional park established by the county at a lake created by the district's dams. Relying in part on article XIII, § 7, and § 48-2978(15), the court reasoned that, "[b]ecause municipalities are permitted to establish, maintain and regulate parks and public grounds, and because [the district] is entitled to engage in activities or enterprises within the powers and privileges of municipalities,

360

[the district] may establish and maintain public parks and may assess the users of these parks." *Maricopa County,* 171 Ariz. at 329, 830 P.2d at 850.

■ ¶ 12 Despite the quoted language, the court noted that the powers of an irrigation district are less than those of municipalities. As Division One explained, "the legislature [did not] intend[ ] to grant special improvement districts unlimited use of municipal powers or place these districts on a par with other political subdivisions." *Id.* An irrigation district's "power to engage in the activities of a municipality generally is proper only when acting for a public purpose, and when the activity is incidental to the primary purpose of the district." *Id.* (citation omitted). *See also City of Mesa v. Salt River Project Agric. Improvement & Power Dist.,* 92 Ariz. 91, 97, 373 P.2d 722, 726 (1962) (although agricultural improvement district in question was "denominated a political subdivision of the state and entitled to all the immunities and benefits granted to municipalities by the Constitution or statutes," district's powers were "obviously limited to the purposes justifying its political existence" and the "privileges and immunities granted extend[ed] only so far as they have a legitimate relationship to the legal objectives for which the District [wa]s organized"). As APS points out, an unrestrained reading of article XIII, § 7, and § 48–2901 the statute conferring on irrigation districts the status of municipalities would effectively deprive the legislature of the power to distinguish between special taxing districts and "municipalities and political subdivisions." Ariz. Const. art. XIII, § 7.

■ ¶ 13 The "organization of an irrigation district in this state is governed by statute," and "once organized[,] such districts have the status of political subdivisions of the state. Ariz. Const. Art. 13, Sec. 7." *Enloe v. Baker,* 94 Ariz. 295, 301, 383 P.2d 748, 752 (1963). Indeed, as our supreme court made clear in *Industrial Development Authority v. Nelson,* 109 Ariz. 368, 374–75, 509 P.2d 705, 711–12 (1973):

> Section 7 of Article XIII was added as an amendment to the Constitution of this State in 1940 after the decision of this Court in *State v. Yuma Irrigation District,* 55 Ariz. 178, 99 P.2d 704 (1940), which held that the property of irrigation districts and other types of districts was not exempt from taxation. The object of the amendment was to grant tax exemption status to such districts.

> The amendment (Section 7, Article XIII) was not intended to limit the authority of the legislature to create political subdivisions; nor did the Yuma Irrigation District decision imply any limitation on the authority of the legislature to act in this field.

¶ 14 Thus, the legislature has acted to limit the ability of irrigation districts to provide electricity to customers only within the district. Section 48–2978(15) first states that an irrigation district may "[p]rovide the *district* with . . . electricity" and then authorizes the district to "engage in any and all activities, enterprises and occupations within the powers and privileges of municipalities generally." (Emphasis added.) *See Mendelsohn v. Superior Court,* 76 Ariz. 163, 169, 261 P.2d 983, 988 (1953) ("[W]ords and phrases in a statute are to be accorded their obvious and natural meaning [and] . . . the legislature is presumed to express its meaning in as clear a manner as possible."). Were we to hold that the second clause permits irrigation districts to provide electricity beyond their district boundaries, we would render the first clause superfluous. *See Diefenbach v. Holmberg,* 200 Ariz. 415, 26 P.3d 1186 (App.2001) (courts do not interpret statutory clauses in a way that renders them superfluous, void, contradictory, or insignificant). By choosing to add the first clause and by using the words "the district," the legislature confined the geographic scope of an irrigation district's electrical service to customers located within the district's boundaries. § 48–2978(15). The specific language of the first clause in § 48–2978(15) thus limits the subsequent general grant of municipal power. *See In re Sullivan's Estate,* 38 Ariz. 387, 392, 300 P. 193, 195 (1931) ("It is the general rule of statutory construction that where there is in a statute a specific clause, and also a general one which in its most comprehensive form would include the former, the general clause is deemed to affect only such cases within its

general language as are not within the provisions of the specific one."). *See also Mercy Healthcare Arizona, Inc. v. Arizona Health Care Cost Containment Sys.*, 181 Ariz. 95, 100, 887 P.2d 625, 630 (App.1994) ("A basic principle of statutory interpretation instructs that specific statutes control over general statutes; when a general and a specific statute conflict, we treat the specific statute as an exception to the general, and the specific statute controls.").

¶ 15 Division One's decision in *Maricopa County* does not compel us to rule otherwise. The court there was required to determine whether an irrigation district was entitled to share fees collected at a regional park established by the county at a lake created by the district's dams. In deciding the question, the court examined the powers granted to municipalities because the irrigation district statutes are silent on the matter. That is not the case before us. Here, we are directly guided by the statute.

¶ 16 Moreover, had the legislature intended to authorize irrigation districts to supply electricity outside their boundaries, it could have expressly said so as it did in the statutes that govern power districts and electrical districts. Section 48–1545(E), A.R.S., permits the board of directors of a power district to "lease or rent the use of power on contract for the delivery thereof to the occupants of other land not included within the district at such prices and on such terms as the board deems best." And A.R.S. § 48–1751(A), which governs electrical districts, states that "[p]ower for pumping for irrigation service shall not be extended outside the district unless there is a surplus of power over and above the needs for irrigation in the district."

¶ 17 Hohokam and the intervenors nonetheless argue that § 48–2978(7) independently authorizes an irrigation district to sell electricity outside its boundaries. That provision permits an irrigation district's board of directors to "[p]rovide for the construction, operation, leasing and control of plants for the generation, distribution, sale and lease of electrical energy, including sale to municipalities, corporations, public utility districts or individuals of electrical energy so generated."

§ 48–2978(7). We disagree because, first, we doubt that Hohokam's mere purchase of energy in the wholesale market brings it within the ambit of districts that construct, operate, lease, or control such plants for generating, distributing, selling, and leasing electrical energy. Second, this provision describes to whom such electrical energy can be sold, not where. That a district's customers may be far-flung does not persuade us otherwise. Conceivably, all could be located within a single irrigation district.

¶ 18 The intervenors next contend that, because our irrigation district statutes are modeled on California's statutes, *see In re Auxiliary Eastern Canal Irrigation District*, 24 Ariz. 163, 207 P. 614 (1922), we are constrained to interpret our laws the same as the California courts. We decline to do so, however, because the California legislature expressly amended its irrigation district statute to provide that nothing in the act " 'shall be so construed as to prevent the sale of power by any district for use outside of the boundaries of such district.' " *Yolo v. Modesto Irrigation Dist.*, 216 Cal. 274, 13 P.2d 908, 909 (1932), *quoting* 1919 Cal. St. at p. 778, § 1, as amended by 1923 Cal. St. at p. 629. The intervenors overlook the significance of our legislature's failure to adopt California's 1923 amendment. In fact, our legislature amended the irrigation district statutes in 1931, enacting the language now codified as § 48–2978(15). 1931 Ariz. Sess. Laws, ch. 98, § 2. Because we conclude it equally plausible that our legislature did not enact a provision such as California's 1923 amendment because it intended that irrigation districts sell electricity only within their district boundaries, we reject the intervenors' argument.

¶ 19 The intervenors also argue that APS should not be permitted to "attack the legal authority of irrigation districts" to serve customers outside their boundaries based on APS's previous acknowledgment of, acquiescence in, and reliance on that authority. We fail to see, however, how APS's actions can somehow confer statutory authority on the irrigation districts. Nor do we find relevant to the disposition of this case the Maricopa

County Intervenors' recitation of the "history and spirit of the statutes" and Hohokam's discussion of the statutes permitting competition among various providers of electricity.

¶ 20 Accordingly, we reverse that portion of the summary judgment in favor of Hohokam and the irrigation districts regarding provision or electricity to customers outside the boundaries of their respective districts, and remand the case to the trial court with directions to enter summary judgment consistent with this decision in favor of APS. In light of our decision, we vacate the trial court's order awarding attorney's fees to the intervenors on the foregoing issue only. We also deny the intervenors' request for attorney's fees on appeal.

BRAMMER, P.J., and PELANDER, J., concur.