# SUPREME COURT OF ARIZONA
## En Banc

| | |
|---|---|
| HOHOKAM IRRIGATION AND DRAINAGE DISTRICT, PINAL COUNTY, ARIZONA, a political subdivision of the State of Arizona, ) ) ) ) | Arizona Supreme Court No. CV-02-0091-PR |

HOHOKAM IRRIGATION AND DRAINAGE DISTRICT, PINAL COUNTY, ARIZONA, a political subdivision of the State of Arizona, )

    Plaintiff/Counterdefendant/ )
                        Appellee, )

                  v. )

ARIZONA PUBLIC SERVICE COMPANY, an Arizona public service corporation, )

    Defendant/Counterclaimant/ )
                   Appellant. )
_____ )

Arizona Supreme Court
No. CV-02-0091-PR

Court of Appeals
Division Two
No. 2 CA-CV 01-0026

Pinal County
Superior Court
No. CV 98-046103

CENTRAL ARIZONA IRRIGATION AND DRAINAGE DISTRICT, a political subdivision of the State of Arizona; ELECTRICAL DISTRICT NO. ONE, Pinal County, Arizona, a political subdivision of the State of Arizona; ELECTRICAL DISTRICT NO. 3, Pinal County, Arizona, a political subdivision of the State of Arizona; ELECTRICAL DISTRICT NO. 4, Pinal County, Arizona, a political subdivision of the State of Arizona; ELECTRICAL DISTRICT NO. 5, Pinal County, Arizona, a political subdivision of the State of Arizona; and MARICOPA-STANFIELD IRRIGATION & DRAINAGE DISTRICT, Pinal County, Arizona, a political subdivision of the State of Arizona, )

         Intervenors/Appellees, )

                  v. )

ARIZONA PUBLIC SERVICE COMPANY, an )

**O P I N I O N**

Arizona public service corporation, )
                                                         )

                  Defendant/Appellant. )
_____)

                                                           )

THE HARQUAHALA POWER DISTRICT, a )
political subdivision of the State )
of Arizona; AGUILA IRRIGATION )
DISTRICT, a political subdivision )
of the State of Arizona; McMULLEN )
VALLEY WATER CONSERVATION AND )
DRAINAGE DISTRICT, a political )
subdivision of the State of )
Arizona; BUCKEYE WATER )
CONSERVATION AND DRAINAGE DISTRICT, )
a political subdivision of the )
State of Arizona; ROOSEVELT )
IRRIGATION DISTRICT, a political )
subdivision of the State of )
Arizona; ELECTRICAL DISTRICT NO. 7, )
a political subdivision of the )
State of Arizona; and ELECTRICAL )
DISTRICT NO. 8., a political )
subdivision of the State of )
Arizona, )

                                                           )

                Intervenors/Appellees, )

                                                           )

                            v. )

                                                           )

ARIZONA PUBLIC SERVICE COMPANY, an )
Arizona public service corporation, )

                                                           )

                  Defendant/Appellant. )

                                                           )
_____)

Appeal from the Superior Court of Pinal County
The Honorable William J. O'Neil, Judge

**AFFIRMED**

-2-

---

Brown & Bain, P.A.                                          Phoenix
    by   Paul F. Eckstein
       Dan L. Bagatell
Attorneys for the Petitioner, Hohokam Irrigation
   and Drainage District, Pinal County, Arizona

Osborn Maledon, P.A.                                        Phoenix
    by   Andrew D. Hurwitz
       Warren Stapleton
Attorneys for the Respondent, Arizona Public
   Service Company

Moyes Storey                                               Phoenix
    by   Jay I. Moyes
       Steven L. Wene
Attorneys for Maricopa County Intervenors
    Harquahala Power District, et al.

Law Offices of Robert S. Lynch                             Phoenix
    by   Robert S. Lynch
       and
Law Office of Paul R. Orme, P.C.                            Mayer
    by   Paul R. Orme
Attorneys for Pinal County Intervenors Central
    Arizona Irrigation and Drainage District, et al.

Gust Rosenfeld P.L.C.                                      Phoenix
    by   Fred H. Rosenfeld
       Richard A. Segal
Attorneys for Amicus Curiae Cortaro Marana
    Irrigation District

Arizona Center for Law in the Public Interest             Phoenix
    by   Timothy M. Hogan
Attorneys for Amicus Curiae
    Arizona Consumers Council

---

**J O N E S, Chief Justice**

## INTRODUCTION

**¶1** We granted review to determine whether irrigation districts have authority, under the constitution and statutes of Arizona, to provide electricity to customers outside established district boundaries. Because we answer in the affirmative, we vacate the decision of the court of appeals and reinstate the trial court's grant of summary judgment in favor of the Hohokam Irrigation and Drainage District. We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution.

## FACTS/PROCEDURAL HISTORY

**¶2** Hohokam Irrigation and Drainage District ("Hohokam") was formed in Pinal County in 1972. In 1997, Hohokam began buying electric power on the wholesale market and reselling it at retail. Arizona Public Service Company ("APS") sells electricity in areas covered by a certificate of public convenience and necessity issued by the Arizona Corporation Commission. This dispute arose because Hohokam began offering competing electrical service outside district boundaries to persons located in the APS service territory.

**¶3** In 1998, Hohokam filed a declaratory suit against APS, claiming the right to serve electricity to customers located outside district boundaries and seeking an injunction to prevent interference from APS. APS counterclaimed, seeking a declaration prohibiting Hohokam from serving customers outside

-4-

its boundaries.  The trial court permitted intervention as a matter of right to the Central Arizona Irrigation and Drainage District; Electrical Districts Nos. 1, 2, 3, and 5 of Pinal County; the Maricopa-Stanfield Irrigation & Drainage District; Harquahala Power District; Aguila Irrigation District; McMullen Valley Water Conservation and Drainage District; Buckeye Water Conservation and Drainage District; Roosevelt Irrigation District; Electrical District No. 7; and Electrical District No. 8 ("the Intervenors").

¶4        On cross-motions for summary judgment, the trial court entered judgment in favor of Hohokam, declaring that irrigation districts have the constitutional and statutory authority to provide electrical service outside district boundaries.  The court of appeals reversed, holding that by enacting Arizona Revised Statute ("A.R.S.") § 48-2978(15)(1997), the legislature prohibited irrigation districts from selling electric power outside district boundaries.  *Hohokam Irr. and Drainage Dist. v. Ariz. Pub. Serv. Co.,* 201 Ariz. 356, 360, ¶14, 35 P.3d 117, 121 (App. 2002).  Hohokam appeals.

                        **DISCUSSION**

**A.    Standard of Review**

¶5        We review the grant of summary judgment *de novo,* and view the evidence and all reasonable inferences in the light most favorable to the party opposing the motion.  *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No.*

*395 Pension Trust Fund,* 201 Ariz. 474, 482, ¶13, 38 P.3d 12, 20 (2002). Likewise, the interpretation of statutes and constitutional provisions is an issue of law that we review *de novo. Ramirez v. Health Partners of S. Ariz.,* 193 Ariz. 325, 327-28, ¶6, 972 P.2d 658, 661 (App. 1998).

**B.   Irrigation District Powers**

¶6        Irrigation districts are entities of statutory creation. *Enloe v. Baker,* 94 Ariz. 295, 301, 383 P.2d 748, 752 (1963). Once organized they become political subdivisions of the state. *Id.* They derive their powers from the constitution and statutes of Arizona.

**1.   Arizona Constitution**

¶7        Article 13, Section 7 of the state constitution is the principal source of powers granted to irrigation and other special purpose districts in Arizona:

> Irrigation, power, electrical, agricultural improvement, drainage, and flood control districts, and tax levying public improvement districts, now or hereafter organized pursuant to law, shall be political subdivisions of the state, and vested with all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions under this constitution or any law of the state or of the United States . . . .

Ariz. Const. art. 13, § 7 (adopted 1940).

¶8        This provision was adopted in response to our decision in *State v. Yuma Irrigation District,* which held that the legislature could not exempt irrigation districts from property

-6-

taxes because no such power existed in the constitution. 55 Ariz. 178, 184, 99 P.2d 704, 706 (1940).

¶9 Although a primary purpose of section 7 was to grant the legislature the power to exempt irrigation districts from taxation, this was not its sole purpose or effect. *Local 266, Int'l Bhd. of Elec. Workers v. Salt River Project Agric. Improvement and Power Dist.,* 78 Ariz. 30, 35, 275 P.2d 393, 396 (1954). Rather, the plain language of the provision vests irrigation and other districts with powers and duties equal to the powers and duties conferred on municipalities and political subdivisions. *See id.* (stating that districts are "vested with all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions under the constitution or any law of the state or of the United States"); *see also Pinetop-Lakeside Sanitary Dist. v. Ferguson,* 129 Ariz. 300, 302, 630 P.2d 1032, 1034 (1981) ("The unmistakable language of Article 13, Section 7 grants improvement districts all immunities and exemptions."); *Maricopa County v. Maricopa County Mun. Water Conservation Dist. No. 1,* 171 Ariz. 325, 331 n.6, 830 P.2d 846, 852 n.6 (App. 1991) (holding Article 13, Section 7's grant of tax exempt status to districts is not the section's sole purpose).

¶10 The constitution grants municipalities "the right to engage in industrial pursuits." Ariz. Const. art. 2, § 34. We

have consistently held that Article 2, Section 34 confers on municipalities the right to engage in industry "without specifying any limitation whatever as to kind or character." *Crandall v. Town of Safford,* 47 Ariz. 402, 409, 56 P.2d 660, 663 (1936). In *Crandall,* we held that by virtue of Article 2, Section 34, a municipality is authorized to distribute surplus water outside its corporate boundaries. *Id.* at 411, 56 P.2d at 663. Similarly, in *City of Phoenix v. Wright,* solely on the basis of Article 2, Section 34, we stated that even in the absence of statutory authority, a municipal corporation is authorized to furnish water to customers residing outside its boundaries. 52 Ariz. 227, 233, 80 P.2d 390, 392 (1938). In *City of Phoenix v. Kasun,* we further confirmed that "a municipal corporation has the right to furnish water through its municipal water plant to customers without, as well as within, its corporate limits." 54 Ariz. 470, 474, 97 P.2d 210, 212 (1939). Read together, Article 13, Section 7 and Article 2, Section 34, in clear terms, confer on irrigation districts the right to engage in industrial pursuits. Certainly the sale of electricity is an industrial pursuit and therefore within the rights and privileges granted municipalities.

### 2. The Irrigation District Act

¶11    In addition to the broad powers granted irrigation districts by the state constitution, the legislature conferred specific statutory powers on these districts in the Irrigation

District Act of 1921. A.R.S. §§ 48-2901 to -3256 (Supp. 2002). The legislature first defined irrigation districts as "municipal corporations for all purposes." A.R.S. § 48-2901. Further, the legislature declared:

> In order to accomplish the purposes of the district the board may:
>
> . . . .
>
> [p]rovide the district with water, electricity and other public conveniences and necessities, and engage in any and all activities, enterprises and occupations within the powers and privileges of municipalities generally.

A.R.S. § 48-2978(15).

¶12    APS argues, and the court of appeals held, that by virtue of the first clause of subsection 15, "the legislature has acted to limit the ability of irrigation districts to provide electricity to customers only *within the district.*" *Hohokam,* 201 Ariz. at 360 ¶14, 35 P.3d at 121 (emphasis added). Hohokam counters that the language of the second clause is more broad and permits irrigation districts to provide electricity to outside customers.

¶13    The appellate court reasoned that the language in the first clause, "may provide *the district* with . . . electricity," expressly limited the general grant of power contained within the second clause, which allows the district to "engage in any and all activities, enterprises and occupations within the powers and privileges of municipalities generally." *Id.* On

-9-

this basis, the court concluded that the legislature restricted the authority of irrigation districts to the sale of electricity solely to customers inside district boundaries. *Id.*

¶14     Viewed as a whole, we conclude that our constitutional and statutory scheme regulating the powers of irrigation districts does not contain the prohibition found by the court of appeals. The initial phrase of subsection 15 is at best vague on the question and, significantly, by reason of its breadth, the second phrase appears to contradict any notion that electric sales must necessarily be confined to district lands.

¶15     Where the language of a statute is not clear, our objective is to discern and give effect to underlying legislative intent. *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). We must, if possible, give meaning to each word, clause or sentence, considered in light of the entire act and the purpose for which it was enacted into law. *Frye v. South Phoenix Volunteer Fire Co.,* 71 Ariz. 163, 168, 224 P.2d 651, 655 (1950).

     **a.    History and Purposes of the Irrigation District Act**

¶16     The Irrigation District Act ("Act"), A.R.S. §§ 48-2901 to -3256, is modeled after the Wright and Bridgeford Acts of California, which date back to the late 1800s. Cal. Stats. 1887, ch. 34, p. 29, Cal. Stats. 1897, ch. 189, p. 254. The Arizona Legislature adopted the Act in 1921, at a time when

-10-

Arizona was largely a rural, undeveloped state, with many areas lacking access to the modern conveniences of water and electricity. This remained true in 1931, when subsection 15 was added. Given this context, we think it improbable that the legislature intended to authorize irrigation districts to sell electric power within district lines, but prohibit them from selling it on the outside.

¶17      We need not rely solely on historical context. The purpose of the Act was to provide for the formation of irrigation districts with sufficient powers to develop strong water systems to irrigate arid land. *Porterfield v. Van Boening,* 154 Ariz. 556, 557, 744 P.2d 468, 469 (App. 1987); *see also Post v. Wright,* 37 Ariz. 105, 112, 289 P. 979, 981 (1930) (the Act provides for the organization of landowners desiring to provide water to irrigate their lands). *See generally* John D. Leshy, *Irrigation Districts in a Changing West—An Overview,* 1982 Ariz. St. L.J. 345, 353 (1982) (discussing the Wright Act and the origins of irrigation districts generally). The Act did this by granting irrigation districts the power to levy property assessments, issue bonds to finance operations, and pledge district lands as collateral for debt. *See, e.g.*, A.R.S. § 48-3185; *Porterfield,* 154 Ariz. at 557, 744 P.2d at 469. A central objective of the Act was to give irrigation districts the ability to generate the financing necessary to achieve their

fundamental purpose. *Porterfield,* 154 Ariz. at 558, 744 P.2d at 470 ("The basic function of an irrigation district is to meter and deliver water to lands within the district and to finance the irrigation system.").

### b. Plain Statutory Language

¶18    Finally, the Act is broadly written. It first declares that irrigation districts are given the powers of municipalities for all purposes. A.R.S. § 48-2901. Next, the Act confers the positive right to "[p]rovide the district with water, electricity and other public conveniences and necessities, and engage in *any and all activities . . . of municipalities generally.*" A.R.S. § 48-2978(15) (emphasis added). Nowhere does the statutory language prohibit the extraterritorial delivery of these services.

¶19    In further support of today's reasoning, A.R.S. § 48-2978(7) provides a broad grant of authority to engage in other pursuits necessary to fulfill district purposes:

> In order to accomplish the purposes of the district the board may:
>
> . . . .
>
> [p]rovide for the construction, operation, leasing and control of plants for the generation, distribution, sale and lease of electrical energy, including sale to municipalities, corporations, public utility districts or individuals, of any electrical energy so generated.

The court of appeals rejected Hohokam's contention under subsection 7 that extraterritorial sale of electricity was

-12-

contemplated. The court opined that "[c]onceivably, all [entities] could be located within a single irrigation district." *Hohokam,* 201 Ariz. at 361 ¶17, 35 P.3d at 122. We disagree. Although multiple entity locations within a district may be possible, it is quite unlikely that this would have been the case in 1921, when subsection 7 was enacted. At that time, Arizona was rural, undeveloped, largely without electricity, and potential electric users were scattered.

¶20 Given this perspective, the purposes of the Act, the broad statutory language, the absence of specific language of prohibition, as well as the broad powers conferred on irrigation districts by the Arizona Constitution, cause us to conclude that the irrigation district statutes permit the sale of electricity to customers outside district boundaries. As stated in *City of Tucson v. Sims,* "[n]othing short of an express prohibition or clear implication to that effect could have this result." 39 Ariz. 168, 177, 4 P.2d 673, 676 (1931).

¶21 Likewise, we decline to accept the argument that the separate statutes granting electrical and power districts express authority to sell electric power outside district boundaries, by implication, prohibit irrigation districts from doing so. *See* A.R.S. §§ 48-1545(E), -1751(A) (2000). There appears no practical basis for that contention and no legal reason to treat irrigation districts differently from other political subdivisions.

### 3.   Irrigation District Powers Are Not Unlimited

¶22     The broad power granted to irrigation districts by the constitution and statutes of Arizona is not without restriction. Authority granted by Article 13, Section 7 is limited "to the purposes justifying [the district's] political existence. The privileges and immunities granted extend only so far as they have a legitimate relationship to the legal objectives for which the District is organized." *Salt River Valley Water Users' Ass'n v. Giglio,* 113 Ariz. 190, 193, 549 P.2d 162, 165 (1976) (quoting *City of Mesa v. Salt River Project Agric. Improvement & Power Dist.,* 92 Ariz. 91, 97, 373 P.2d 722, 726 (1962)).

¶23     This limitation is written into the Act as well, which provides that irrigation district powers must be exercised in order "to accomplish the purposes of the district." A.R.S. § 48-2978.   We interpreted this very language in *City of Scottsdale v. McDowell Mountain Irrigation and Drainage Dist.,* stating that "the power to engage in activities of municipalities generally is proper only when acting pursuant to the purpose of irrigating arid lands." 107 Ariz. 117, 123, 483 P.2d 532, 538 (1971).   Activities are thus permitted, but only to the extent they are incidental to and in furtherance of the primary purpose of the irrigation district. *See Maricopa County Mun. Water Conservation Dist. No. 1,* 171 Ariz. at 329, 830 P.2d at 850 ("The power to engage in the activities of a municipality

-14-

generally is proper only when acting for a public purpose, and when the activity is incidental to the primary purpose of the district.").

### 4.   Extraterritorial Sale of Electricity

¶24      Thus, the power of irrigation districts to engage in the activities of municipalities extends only to those activities that are either necessary or incidental to achieving the district's primary purpose.  The primary purpose of irrigation districts is to irrigate arid land, providing water for agriculture.  *City of Scottsdale v. McDowell Mountain Irr. and Drainage Dist.,* 107 Ariz. at 123, 483 P.2d at 538; *see also Post,* 37 Ariz. at 112, 289 P. at 981.

¶25      We have long recognized that electricity is necessary for the operation of a modern irrigation system.  *Orme v. Salt River Valley Water Users' Ass'n,* 25 Ariz. 324, 339, 217 P. 935, 940 (1923).  We have also recognized that an irrigation district's authority to sell electricity is incidental to its primary purpose of providing water for irrigation.  *Santa Cruz Irr. Dist. v. City of Tucson,* 108 Ariz. 152, 153, 494 P.2d 24, 25 (1972) (citing *City of Mesa v. Salt River Project Agric. Improvement and Power Dist.,* 92 Ariz. at 104, 373 P.2d at 733).

¶26      The question, then, is whether the extraterritorial sale of electricity purchased on the wholesale market also qualifies as an activity that is incidental to Hohokam's primary

purpose. An assertion of fact, uncontested in the summary proceedings before the trial court, demonstrates that the purpose of Hohokam's entry into the electric power business in 1997 was to generate revenues exclusively committed to reducing the cost of irrigation water to the district's member-farmers. *See* Hohokam's Statement of Facts in Support of Motion for Summary Judgment, ¶3. On the record before us, we therefore conclude that Hohokam's sale of electric power is incidental to and in furtherance of the district's primary purpose.

¶27     We recognize that the question whether a given revenue generating activity is incidental to and in furtherance of a district's primary purpose would normally require a specific determination by the trier of fact. *See City of Scottsdale v. McDowell Mountain Irr. and Drainage Dist.*, 107 Ariz. at 123, 483 P.2d at 538; *Santa Cruz Irr. Dist. v. City of Tucson*, 108 Ariz. at 153, 494 P.2d at 25; *and City of Mesa v. Salt River Project Agric. Improvement and Power Dist.*, 92 Ariz. at 97, 373 P.2d at 726. This, however, is a declaratory judgment suit that raises a question of law to be determined on stipulated facts. Further fact finding in the instant case is therefore unnecessary because the trial record establishes as undisputed the facts that control this issue.

### 5.   A.R.S. § 9-516

¶28     Finally, we do not agree that A.R.S. § 9-516 (1996)

requires Hohokam first to acquire APS's property and plants before extending electrical service to areas covered by the APS certificate of public convenience and necessity. We have previously held that by its express language, section 9-516 applies only to cities and towns, not to all municipal corporations. *Davis v. Brittain,* 92 Ariz. 20, 30, 373 P.2d 340, 347 (1962). The statute simply does not apply to irrigation districts.

¶29    APS also contends that allowing Hohokam to sell electricity without complying with section 9-516 grants Hohokam rights superior to the rights of cities and towns. We disagree. Hohokam's rights should simply be characterized as different. Hohokam's right to engage in the activities of municipalities is limited to activities that are incidental to and in furtherance of Hohokam's primary purpose. In contrast, the rights granted to cities and towns are more comprehensive and relate to a wide array of functions.

¶30    Our interpretation of Article 13, Section 7 does not limit the ability of the legislature to create special purpose districts. It remains the legislature's responsibility to define the primary purposes of all constitutionally authorized districts. In so doing, the legislature retains the authority to define the extent of each district's powers.

## CONCLUSION

¶31    The wholesale purchase and retail sale of electric

power by irrigation districts is a new circumstance, perhaps not yet fully evaluated by the Arizona Legislature. While it is a new practice, not previously addressed by this court, we conclude that under today's constitution and statutory scheme, the practice is not prohibited. We therefore hold that an irrigation district is authorized to market and sell electric power to customers outside its boundaries. This right is limited, however, and may be exercised only to the extent that it is incidental to and in furtherance of the district's primary purpose. This matter is remanded to the superior court with instructions to enter judgment for Hohokam consistent with this opinion.

_____
     Charles E. Jones, Chief Justice

CONCURRING:

_____
Ruth V. McGregor, Vice Chief Justice

_____
Rebecca W. Berch, Justice

_____
Michael D. Ryan, Justice

_____
Stanley G. Feldman, Justice (retired)